17 F.3d 397
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert W. GUTHRIE, Defendant-Appellant.
 No. 93-30066.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 16, 1993.
Decided Feb. 10, 1994.
 
 1
 Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 * "Whether a jury instruction misstates elements of a statutory crime is a question of law and is reviewed de novo." United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992). Contrary to Guthrie's contention, the instructions given in this case did not make bid rigging a strict liability crime. They required the government to prove Guthrie knowingly entered into agreements with potential competitors for the purpose of preventing them from bidding on the properties. Such instructions "correctly state[ ] the government's burden" in a bid rigging case. United States v. Alston, 974 F.2d 1206, 1210 (9th Cir.1992).
 
 
 4
 The government was not required to prove Guthrie intended to restrain trade. When a per se violation of the Sherman Act is charged, "it [is] not necessary to instruct the jury that it [has] to find that the defendants acted with the purpose of achieving anticompetitive effects or with the knowledge that such effects likely would result." United States v. Brown, 936 F.2d 1042, 1046 (9th Cir.1991); see also Alston, 974 F.2d at 1213 ("In a criminal antitrust prosecution, the government need not prove specific intent to produce anticompetitive effects where a per se violation is alleged.").
 
 
 5
 Brown and Alston are not inconsistent with United States v. United States Gypsum Co., 438 U.S. 422 (1978). In Brown, this circuit joined six others in holding that the intent required in Gypsum is limited to cases involving the rule of reason. Expanding Gypsum to cover cases involving per se violations would frustrate the purpose of the per se rule, namely, to prohibit certain practices that almost invariably harm competition and have no redeeming virtue without regard to their actual effect on competition in the particular cases. Brown, 936 F.2d at 1046.
 
 
 6
 Brown did not mischaracterize Gypsum as a rule of reason case. Gypsum was a rule of reason case. The defendants in Gypsum allegedly violated Sec. 1 by exchanging pricing information. As the Court noted:
 
 
 7
 The exchange of price data and other information among competitors does not invariably have anticompetitive effects.... For this reason, we have held that such exchanges of information do not constitute a per se violation of the Sherman Act.
 
 
 8
 Gypsum, 438 U.S. at 441 n. 16. Although the court noted in Brown that the instructions in that case appeared to satisfy the Gypsum intent requirement, 936 F.2d at 1046 n. 3, the statements in Brown that the Gypsum intent requirement is limited to rule of reason cases are not dicta, as Guthrie suggests, but are the primary basis for Brown's holding and are cited as such in subsequent Ninth Circuit cases. Alston, 974 F.2d at 1213.
 
 
 9
 The district court here properly instructed the jury "[i]t is not a defense to bid rigging that the defendant may have had good motives or may have thought that what he was doing was legal or that the conspiracy may have had some good results." As the Supreme Court held in National Collegiate Athletic Ass'n v. Bd. of Regents, 468 U.S. 85, 101 n. 23 (1984), "good motives will not validate an otherwise anticompetitive practice." We held in Alston that the jury instruction Guthrie challenges "is an accurate statement of the law." Alston, 974 F.2d at 1210.
 
 
 10
 A conspiracy may violate the Sherman Act even if not animated by a bad purpose. To sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the government must prove only the degree of criminal intent required for the substantive offense. United States v. Feola, 420 U.S. 671, 686-96 (1975). Accordingly, the government was required to prove only that Guthrie conspired to intentionally rig bids.
 
 II
 
 11
 The court considers de novo whether a statute is unconstitutionally vague. United States v. Hawkins, 899 F.2d 852 (9th Cir.1990).
 
 
 12
 This and other circuits have held that Sec. 1 of the Sherman Act is not unconstitutionally vague as applied to price fixing:
 
 
 13
 The indictment charges Miller with price-fixing. Because price-fixing has repeatedly been held to be per se illegal under the Sherman Act ..., Miller could not have had any reasonable doubt that his conduct violated section one. The district court did not err in denying Miller's motion to dismiss the indictment on the ground that section one of the Sherman Act is unconstitutionally vague.
 
 
 14
 United States v. Miller, 771 F.2d 1219, 1225 (9th Cir.1985); see also United States v. Koppers Co., Inc., 652 F.2d 290, 294 (2d Cir.1981) ("In cases involving behavior such as bid rigging, which has been classified by courts as a per se violation, the Sherman Act will be read as simply saying: 'An agreement among competitors to rig bids is illegal.' ") (citation and internal quotation omitted).
 
 
 15
 The notice concerns that arise when criminal liability is imposed for conduct within the "grey zone" to which the rule of reason applies, Gypsum, 438 U.S. at 440-41, are not present when liability is imposed for conduct that is per se illegal. The latter may be punished irrespective of the perpetrator's intent to harm competition, since such punishment will not deter lawful conduct.
 
 
 16
 Guthrie argues that even if he were charged with notice that bid rigging is per se illegal, he was not on notice that his conduct constituted bid rigging. This kind of ambiguity, however, does not make a statute vague. The jury was instructed that Guthrie could be convicted only if the jury found beyond a reasonable doubt that Guthrie's conduct actually constituted bid rigging.
 
 III
 
 17
 The district court did not err by refusing to instruct the jury on collusion. The cases cited by Guthrie merely describe the bid rigging in the particular case as having been collusive. They do not hold collusion is an element of a per se violation. Bid riggers often act secretly but their conduct is equally anticompetitive if they openly agree not to compete.
 
 
 18
 The district court did not err by refusing to instruct the jury on the effect of a seller's acquiescence in bid rigging. The instruction given by the district court required the jury to find that the property was offered for sale through a competitive bidding process. The jury could not have convicted Guthrie if he had negotiated the purchase with the sellers rather than rigged the bidding. See United States v. Lopez, 885 F.2d 1428, 1434 (9th Cir.1989) (holding that district court did not err when it rejected a defendant's proposed instruction since other instructions adequately covered the defense's theory).
 
 
 19
 Moreover, Guthrie offered no evidence that the banks authorized the trustees to sell the property other than by auction. United States v. Mason, 902 F.2d 1434, 1438 (9th Cir.1990) (holding that a defendant is not entitled to have the court instruct the jury on his theory of the case unless it "has some foundation in the evidence").
 
 IV
 
 20
 * Guthrie argues the district court erred by instructing the jury it could convict if it found the foreclosure sale was "an essential part of a real estate transaction across state lines." The Supreme Court held in Goldfarb v. Virginia State Bar, 421 U.S. 773 (1975), that fixing the price of a service restrains an interstate real estate transaction if the service is an "integral part" of the interstate transaction. Id. at 784-85. The terms "essential part" and "integral part" have the same meaning. Both require the jury to find as a matter of fact that the interstate transaction would not have occurred absent the service or event in question. In Goldfarb, the service was a title examination; in this case, the event was a foreclosure sale.[1] Thus it was proper for the district court to give the following instruction: "If you find that the [trustee sale] was an essential part of the foreclosure transaction involving the transfer of funds from the State of Washington to [other states], then the interstate commerce requirement would be met...." This instruction was consistent with Goldfarb since it required the jury to find the rigged foreclosure sale was an essential part of the interstate movement of funds.
 
 
 21
 Guthrie also appears to argue that movement of money across state lines incidental to a real estate transaction does not constitute interstate commerce. Goldfarb is direct authority to the contrary.
 
 B
 
 22
 There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 23
 Guthrie argues he did not rig bids in interstate commerce, but rather in a local real estate transaction. The evidence supports the jury's conclusion that the rigging occurred in the course of a single continuous interstate transaction. Banks located in South Carolina and Maryland held promissory notes on the two parcels of Washington real estate involved. After the owners of the properties defaulted, the banks initiated foreclosure proceedings by obtaining a "bid-in" price from HUD in Washington, D.C. Since the loans were insured by HUD, the banks were required to enter a minimum bid in the amount of this bid-in price and auction the properties to the highest bidder. The banks hired trustees in Spokane, Washington, to perform these duties on their behalf. The sales price determined at each auction was paid by the purchaser to the trustees in Washington and transferred by the trustees to the banks in South Carolina and Maryland. Thus, the out of state banks initiated the sales after the borrowers defaulted on their loans and conducted the sales through their agents, the trustees, to obtain the highest possible return. Guthrie argues he paid for the property in Spokane by transferring funds to the trustees in Spokane, but the evidence showed the trustees had no right to the funds, and were obligated to and did forward them to the banks in interstate commerce.
 
 
 24
 Finally, the evidence supports the jury's conclusion that the foreclosure sales were necessary to enable the banks to recover on their loans, and therefore were an essential part of the interstate foreclosure transactions. Though the loans were guaranteed by HUD, the banks were required to foreclose on the properties and complete the sales before filing their claims.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The parties are familiar with the facts and issues and we will not restate them here. This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Guthrie suggests Goldfarb is an "effect on commerce" case, the Supreme Court has explicitly characterized Goldfarb as a case involving a restraint "in the flow of interstate commerce." McLain v. Real Estate Bd. of New Orleans, 444 U.S. 232, 244 (1980)