UNITED STATES of America,
Plaintiff–Appellee,

v.

Dale Leroy JOHNSON, Defendant–Appellant.

No. 91–30157.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 9, 1992.*

Decided Jan. 31, 1992.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Brian L. Delaney, Mulroney, Delaney & Scott, Missoula, Mont., for defendant-appellant.

Kris A. McLean, Asst. U.S. Atty., Helena, Mont., for plaintiff-appellee.

Before WRIGHT, NORRIS and HALL, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Dale Leroy Johnson appeals from the judgment on a jury verdict convicting him of removing topsoil from a tract of land mortgaged to the Secretary of Agriculture in violation of 18 U.S.C. § 658. Section 658 provides:

> Whoever, with intent to defraud, knowingly conceals, removes, disposes of, or converts to his own use or to that of another, any property mortgaged or pledged to, or held by ... the Secretary of Agriculture acting through the Farmers' Home Administration ... shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the value of such property does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

Johnson was sentenced to 120 days of home confinement and 300 hours of community service. On appeal, he challenges the court's refusal to admit testimony on the value of the land as well as several refused jury instructions, the sufficiency of the evidence and the length of his sentence. We affirm.

## I

In 1979, Johnson and his wife signed promissory notes to the Farmers' Home Administration (FmHA) totalling approximately $270,000. Johnson gave a mortgage granting the FmHA a security interest in the property at issue. The mortgage contained a number of provisions forbidding the mortgagor from injuring the mortgaged property.[1]

In 1984, Johnson's dairy business fell upon hard times. When the dairy failed, he was forced into bankruptcy. In an attempt to remedy his declining financial situation, he developed a scheme to sell topsoil off the land mortgaged to the FmHA. He began to sell the topsoil in 1987, hiring two farm hands, Farrier and Devereaux, to help him remove, sell and deliver all topsoil on the property. Johnson checked their progress frequently and urged them to work rapidly.

Using a front end loader, Farrier filled a dump truck with topsoil. Then, he and Devereaux delivered the topsoil to Johnson's business, where it was stockpiled for later sale and delivery to Missoula area purchasers. Johnson openly advertised the soil for sale.

The FmHA's local director, Stanley Faught, learned of the sales and investigated. When he inspected the property, he discovered an area he estimated at 350 feet by 450 feet stripped of topsoil. He saw heavy equipment tracks and noted the area was lowered approximately two feet in elevation. He determined that Johnson had indeed sold topsoil in violation of the terms of his mortgage and the statute.

## II

Johnson first contends the district court erred in excluding evidence regarding the effect that removal of the topsoil had on the fair market value or the highest and best use of the subject property. We disagree. Under section 658, the government must prove that the defendant, with intent to defraud, knowingly concealed, removed, disposed of, or converted to his own use property worth more than $100 and mortgaged to the FmHA. Whether the removal of the topsoil had any effect on the value of the land and its highest and best use is irrelevant because the effect of the defendant's action on the value of the property is not an element of the crime. *United States v. Benny,* 786 F.2d 1410, 1417 & n. 2 (9th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986) (approving jury instruction reading "the evidence in the case need not establish that any lender was actually defrauded, but only that the accused acted with intent to defraud."); *Manual of Model Jury Instructions for the Ninth Circuit* § 3.15 comment (Supp. 1991). Expert testimony on this issue would have been equally irrelevant. It was not error to exclude it.

## III

Johnson contends that it was error to refuse a number of his proposed jury instructions. We review the formulation of jury instructions for abuse of discretion. *United States v. Linn,* 880 F.2d 209, 217 (9th Cir.1989). Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo. *United States v. Spillone,* 879 F.2d 514, 525 (9th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).

Johnson argues that it was error to refuse his requested instruction on the specific intent necessary to show a violation of section 658. We discourage the use of generic specific intent instructions and be-

---

1. Covenant 9 required the defendant to "operate the property in a good and husbandmanlike manner; ... and not to abandon the property, or cause or permit waste, lessening or impairment of the security...." Covenant 12 provid- ed that "[n]either the property or any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government...."

lieve district courts should "define the precise mental state required by the particular offense charged as an element of the offense which must be proved beyond a reasonable doubt." *Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 5.04 (1989). The court therefore instructed the jury that "[t]o act with 'intent to defraud' means to act knowingly and with the intent to deceive or cheat, ordinarily for the purpose of causing a financial loss to another and bringing about a financial gain to one's self." The Eighth Circuit approved a virtually identical instruction in *United States v. Porter*, 842 F.2d 1021, 1026 n. 3 (8th Cir.1988). We agree with that approach and hold that the district court properly instructed the jury regarding the need to find intent to defraud.

■ Johnson also contends that the court improperly instructed the jury regarding what level of knowledge was necessary to support a finding of intent to defraud. Johnson's argument is meritless because the district court fully instructed the jury regarding the knowledge element of the crime:

> ... You are instructed that an act is done "knowingly" if the defendant realized what he or she was doing and did not act through ignorance, mistake, or accident.

> ... Mere negligence, even gross negligence, is not sufficient to constitute wilfulness under the criminal law.

This instruction was in line with other circuit law and this circuit's model jury instructions. *Porter*, 842 F.2d at 1026; *Manual* at § 5.04 (1989).

■ Johnson next argues that the district court erred by instructing the jury that the government must prove an intent to cause a loss to another *or* to bring about a gain to oneself. Johnson argues that the government was required to prove both of those propositions. Although the court initially instructed the jury that it must prove both propositions, changing the instruction was not an abuse of discretion. Moreover, we have approved the disjunctive instruction in our model jury instructions and in the context of a prosecution for mail fraud.

*Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 5.04 (1989); *United States v. Seymour*, 576 F.2d 1345, 1347–48 (9th Cir.) (holding similar instruction "thoroughly acquainted the jury with the term[ ] 'intent to defraud.' "), *cert. denied*, 439 U.S. 857, 99 S.Ct. 171, 58 L.Ed.2d 164 (1978). We find the instruction equally appropriate here.

■ Johnson argues that the court erred when it refused his instruction that to find a violation of section 658, the jury must find that he knew the topsoil itself was mortgaged to the FmHA. He is incorrect. That argument would require the FmHA to draft mortgages of several pages, identifying every possible element comprising each parcel mortgaged. Such specificity in mortgages is undesirable and unjustifiably onerous. FmHA County Supervisor Walkup and District Director Faught testified that the topsoil was mortgaged property and that the property without topsoil would be less valuable. From this evidence, the court properly refused the instruction, indicating instead to the jury that the mortgage covered all property, including the topsoil.

## IV

Johnson's next argument, that the evidence was insufficient to support his conviction, is also without merit. In reviewing such a claim, we examine the record as a whole and view the evidence in the light most favorable to the government. *United States v. Adler*, 879 F.2d 491, 495 (9th Cir.1988). We will uphold the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* Our careful review of the facts convinces us that the evidence of guilt was overwhelming. Johnson knew that he could not harm the mortgaged land. He took the topsoil, sold it, and acknowledged to others that he knew he did not have the right to do so. Sufficient evidence supports the verdict.

## V

■ Johnson contends the district court erred in valuing the loss from his

topsoil sale at $10,000. He challenges his sentence, claiming that the court's erroneous valuation resulted in an improper increase of four in his offense level. U.S.S.G. § 2B1.1. The district court's factual findings at sentencing are reviewed for clear error. *United States v. Burns*, 894 F.2d 334, 336 (9th Cir.1990).

Sufficient evidence supports the court's topsoil valuation. Farrier, who was responsible for hauling a significant amount of topsoil, testified that he charged customers $10 per yard for it on behalf of Johnson. Devereaux, who worked with Farrier and for Johnson, testified that Johnson charged $50–60 per load, where a load comprised five to seven yards of topsoil. The record supports the finding that 1,000 yards of topsoil was removed and the court's estimate was conservative. The presentence report indicated that more than 10,000 yards had been removed.

The district court's findings involve assessments of witness' credibility and are therefore owed great deference. The court's acceptance of Farrier's testimony and the evidence that at least 1,000 yards of topsoil was removed was not error. Calculation of the sentence was correct.

AFFIRMED.