UNITED STATES of America, Plaintiff–Appellee,

v.

Ronald Olen BURROWS, Defendant–Appellant.

No. 93–50142.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1994.

Decided Sept. 29, 1994.

Karen L. Landau, San Francisco, CA, for defendant-appellant Burrows.

Jeffrey W. Johnson, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, CANBY, and HALL, Circuit Judges.

FLETCHER, Circuit Judge:

Ronald Olen Burrows appeals from his conviction for drug trafficking crimes, arguing that two of the district court's jury instructions were erroneous. Burrows also attacks four aspects of the sentence imposed by the district court. We affirm the conviction, and conclude that the district court ruled correctly on three of the four sentencing issues raised by Burrows. We remand so that the court may re-address the fourth.

## BACKGROUND

In early December 1991, "Bugsy," an informant working for the DEA, had a series of consensually monitored telephone conversations with Burrows. Bugsy offered to put Burrows in contact with a prospective buyer who, Bugsy said, wished to purchase five pounds of methamphetamine. Unbeknownst to Burrows, the prospective buyer was an undercover DEA agent. Bugsy and Burrows arranged to meet at a liquor store on December 5, 1991, and thereafter to meet the supposed purchaser.

Burrows testified that on December 4, 1991, the day before the meeting with Bugsy and the buyer, he contacted his source, codefendant Rodriguez. On December 5, before the scheduled meeting, Burrows and Rodriguez drove to a hotel room in Oceanside, where Rodriguez retrieved the methamphetamine and gave it to Burrows. Burrows then drove back to the San Fernando Valley, joined up with Bugsy, and went with him to a shopping center parking lot. Bugsy and Burrows were met there by DEA agent Steve Youngblood, posing as a buyer. Burrows was arrested after he produced the five pounds of methamphetamine.

Burrows immediately waived his *Miranda* rights and attempted to convince the agents that he too was working undercover, helping Riverside County Deputy Sheriff Kenneth Vann to arrest Rodriguez. Burrows agreed to assist the DEA agents by placing a call to Rodriguez, his supplier. Burrows was eventually able to summon Rodriguez by telling him the deal was in danger of unravelling

because the buyers had not brought enough money. Rodriguez arrived at the shopping center with two companions and prepared to negotiate. He and his companions were arrested.

Burrows continued to cooperate with the government, twice meeting with the U.S. Attorney's Office and the DEA and inculpating Rodriguez and his two companions, Paez and Rivas. Burrows also continued to maintain, however, that at the time of his arrest he was working undercover for Deputy Vann. Not believing this story, the government prosecuted Burrows along with Rodriguez and Paez.

The three were tried together. At trial, Burrows testified that he was or believed himself to have been working undercover in an attempt to help Deputy Vann. Vann testified that he had visited Burrows in jail at Burrows's request and had asked him to target Rodriguez, but that Burrows had never worked as an informant for him, never paged him during the events giving rise to this case, and was not working for him at the time of those events.

The district court instructed the jury on the defense of public authority. The jury rejected Burrows's defense, and convicted him of possession with intent to distribute methamphetamine and conspiracy to distribute methamphetamine.[1] On appeal, Burrows argues that the district court erred by instructing the jury that he could make out a defense of public authority only if he reasonably believed that he was acting pursuant to police authority. Burrows also contends that the district court erred by instructing the jury, at the behest of Rodriguez, that the testimony of a drug addict—which Burrows at one time had been—should be regarded with special scrutiny.

Burrows was sentenced to 262 months in prison. He contests four aspects of his sentence: (1) the district court's refusal to consider granting a downward departure based on youthful lack of guidance; (2) the district court's failure to grant a downward adjustment based on acceptance of responsibility;

---

**1.** Rodriguez and Paez were also convicted of drug trafficking and firearms offenses. Their

appeals have been addressed in two separately issued memorandum dispositions.

(3) the government's failure to recommend a downward departure based on substantial assistance; and (4) the district court's refusal to entertain collateral attacks on prior convictions used for computing criminal history points.

## DISCUSSION

### A. Drug Addict Instruction

 After the close of evidence, the court instructed the jury as follows:

> If a witness is a narcotics addict, there are additional reasons why his testimony should be considered with great care. An addict has a constant need for a supply of drugs and for money to support his habit, and may also have an abnormal fear of imprisonment in which his supply of drugs might be cut off. These are special circumstances which you may consider in weighing testimony of this kind. You of course may give the testimony such weight as you think proper, after considering all relevant circumstances.

RT 6/9/92 at 138. This instruction was requested by codefendant Rodriguez, who had been inculpated by Burrows's testimony; the instruction was read over Burrows's objection. The court also admonished the jury to examine the testimony of an accomplice and of a cooperating individual with greater care than the testimony of an ordinary witness. It is undisputed that all three instructions were intended to refer to Burrows. Burrows now argues that the addict instruction was inappropriate, particularly in the context of

the two other cautionary instructions given by the court. We review the jury instructions as a whole, *United States v. Joetzki*, 952 F.2d 1090, 1095 (9th Cir.1991), and accord to the trial judge substantial latitude, so long as the instructions fairly and adequately covered the issues presented. *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir.1991).

We have long recognized the appropriateness of the instruction given by the district court when it refers to government witnesses. *People of Territory of Guam v. Dela Rosa*, 644 F.2d 1257, 1261 (9th Cir.1980); *United States v. Bernard*, 625 F.2d 854, 858–59 (9th Cir.1980). At the same time, we have recognized that each of the following circumstances renders the addict instruction unnecessary: (1) a dispute as to the witness's addiction; (2) adequate opportunity for the adverse party to cross-examine the witness about his addiction; and (3) the court's reading of other cautionary instructions. *United States v. Ochoa–Sanchez*, 676 F.2d 1283, 1289 (9th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982).[2]

Burrows argues that because all three circumstances were present in his case, the addict instruction should not have been given. But *Ochoa*, like the scores of other cases dealing with the addict instruction, arose in a different context than this case. In nearly every other case, the defendant appeals the district court's *refusal* to give an instruction pertaining to the testimony of a prosecution witness—not the district court's *granting* of the request to give an instruction pertaining to the testimony of the defendant himself.[3]

---

**2.** Many other courts, in the twelve years since *Ochoa* was decided, have also recognized that these conditions may render an addict instruction unnecessary. *E.g., United States v. Spriggs*, 996 F.2d 320, 325–26 (D.C.Cir.1993) (addict instruction unnecessary where trial court gives cautionary instruction regarding testimony of accomplices), *cert. denied*, ── U.S. ──, 114 S.Ct. 359, 126 L.Ed.2d 323 (1993); *United States v. Nicholson*, 983 F.2d 983, 991–92 (10th Cir.1992) (addict instruction unnecessary where trial court gives general impeachment instruction and special instructions on the credibility of felony witnesses and immunized witnesses); *United States v. McGhee*, 882 F.2d 1095, 1100 (6th Cir.1989) (addict instruction unnecessary where trial court gives general impeachment instruction and special instruction on the credibility of informants); *United States v. Solomon*, 856 F.2d 1572, 1578–

79 (11th Cir.1988) (court's failure to give addict instruction not plain error where court gives instructions regarding cooperating and immunized witnesses), *cert. denied*, 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989).

**3.** The one case of which we are aware arising in the same context as the present case is *Godfrey v. United States*, 353 F.2d 456 (D.C.Cir.1966). There, both the defendant and several prosecution witnesses were drug addicts; the district court instructed the jury that "It is recognized that a drug addict is inherently a perjurer when his own interests are concerned." *Id.* at 458. The D.C. Circuit reversed, concluding that the instruction improperly singled out the defendant ("when his own interests are concerned") and was impermissibly definite and concrete ("It is recognized"). *Id.*

Hence the focus in the caselaw has been on whether an addict instruction is *necessary* as it applies to a *government witness*—not on whether it is *permissible* when it refers to a *defendant.*

■ We agree with Burrows that in this case the instruction was unnecessary, if for no other reason than that the jury was given other cautionary instructions. *See Ochoa,* and cases cited at note 2, *supra.*[4] The question here, however, is whether the instruction was permissible. That is a separate inquiry. *See, e.g., United States v. Smith,* 692 F.2d 658, 661 (10th Cir.1982) (under certain circumstances, court may give addict instruction even where unnecessary), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

We need not decide the degree to which Burrows's position as a defendant renders the instruction impermissible, *see Godfrey v. United States,* 353 F.2d 456, 458 (D.C.Cir. 1966) (addict instruction that aimed "more pointedly at accused" than at prosecution witnesses is plain error), because in any event the instruction should not have been given if there was no adequate evidentiary basis for it. *See, e.g., United States v. Tabacca,* 924 F.2d 906, 912 (9th Cir.1991) (defendant not entitled to instruction which has no foundation in evidence); *United States v. Pace,* 833 F.2d 1307, 1314 (9th Cir.1987) (same), *cert. denied,* 486 U.S. 1011, 108 S.Ct. 1742, 100 L.Ed.2d 205 (1988). The evidence of addiction consisted primarily of Burrows's statement "I am a recovering cocaine addict." RT 6/5/92 at 80.

We draw guidance from cases concerning the factual basis which renders the addict instruction necessary. In *United States v. Tousant,* 619 F.2d 810 (9th Cir.1980), we held that the district court correctly refused to give an addict instruction where the witness

had at one time been addicted to heroin but was not using it at the time of trial, had not used the drug for more than six months before trial, and even then had used drugs only twice a week. *Id.* at 812. In *Dela Rosa,* a case in which we reversed defendant's conviction on other grounds, we instructed the trial court that on remand it should determine whether or not the witness, who was involved in a Methadone rehabilitation program, was "actually a heroin addict." 644 F.2d at 1261.

■ *Dela Rosa* is instructive. Its implicit teaching is that the mere fact that a person is a recovering drug addict is *not* sufficient to warrant an addict instruction. A person who is attending a Methadone program, as was the witness in *Dela Rosa,* is almost by definition a recovering drug addict. But the *Dela Rosa* court required *more* than this, and stated that the addict instruction would be appropriate only if it were proved that the witness was "actually" an addict. 644 F.2d at 1261. In the present case, no such additional showing was made. It was shown *only* that Burrows was a recovering drug addict.[5]

The need to show current drug addiction as a foundation for giving the instruction is underscored by the language of the instruction itself. The instruction refers to an addict's need for money to support his habit, and to his "abnormal" fear of prison, a place where his drug supply may be cut off. These observations have little if any application to the recovering addict, who presumably has determined that he will no longer use drugs and hence has no need for money with which to buy them and no abnormal fear of being deprived of them while in prison. The addict instruction is close to irrelevant in the absence of an evidentiary foundation of present addiction. Because it has the danger of unfairly prejudicing the jury against the defendant, it is also improper.

4. We note too that because Burrows was not a government witness but rather a defendant, it was already evident to the jury that he had an enormous stake in his testimony and in the trial. His bias was apparent from the start. The addict instruction, which is essentially designed to alert the jury to the danger of bias, was redundant.

5. The government argues that the evidence also showed that Burrows was using drugs six months before trial. But under *Tousant,* that is

clearly not enough. 619 F.2d at 812. In addition, the government argues that because Burrows was free on bond at the time of trial, he had the opportunity to continue using drugs. But opportunity can hardly be equated with action. Indeed, defense counsel stated at oral argument that Burrows was subject to drug testing while on bond, and the government has not provided any evidence of a positive test.

We thus conclude that the district court erred by giving the addict instruction.[6] We also conclude, however, that under the circumstances of this case, the prejudice resulting from the error was harmless beyond a reasonable doubt. *See United States v. Rubio–Villareal*, 967 F.2d 294, 296–97 n. 3 (9th Cir.1992) (en banc).[7] Although Burrows insisted that he was a confidential informant (CI), Deputy Vann testified that he employs CI's only pursuant to signed contracts, and that he never entered into such a contract with Burrows. Vann also testified that he asked Burrows to call him in connection with targeting Rodriguez when he got out of jail, but that Burrows never contacted him until after the deal had gone down and he had been arrested by the DEA. While Burrows explained that he tried to call Vann many times after beginning to deal with Bugsy (a story partially corroborated by Burrows's fiancee), Burrows was unable to explain why all of his pre-arrest attempts at communication were unsuccessful.

Because in this case so much turned on credibility, ordinarily we would be reluctant to conclude that an instruction undermining credibility could be harmless. But Burrows's credibility was very seriously damaged even apart from the addict instruction. Burrows's own testimony called his credibility into serious question. On one occasion, Burrows was caught in a lie on the stand concerning his dealings with Deputy Vann. On another occasion, Burrows backed down once it became clear that the prosecutor had personal knowledge of the matter about which Burrows was testifying. The testimony of other witnesses had the same damaging effect. Deputy Vann testified that Burrows was not reliable. Terry Hill, Burrows's probation officer, testified that Burrows was only "sometimes" truthful. In addition, the jury was told to examine Burrows's testimony with special care because Burrows was a felon, a cooperating individual, and an accomplice. Numerous cases have held that if another cautionary instruction is given, the addict instruction becomes unnecessary. *See supra* at 878 & n. 2. These cases are premised on the principle that once the jury is on notice that a witness's testimony is inherently open to suspicion, the force of additional cautionary instructions is limited. In this case, given the number of instances in which other witnesses or Burrows himself put Burrows's credibility into question, and given the number of other instructions alerting the jury to the inherently suspect nature of his testimony, we conclude the district court's error was harmless beyond a reasonable doubt.[8]

## B. *Public Authority Instruction*

█ Burrows's defense at trial was that he was working as an informant, under the

**6.** We recognize that in this case, because the instruction was requested not by the government but by a codefendant, the district court may at first glance appear to have been caught between two conflicting duties: its obligation to give Rodriguez the cautionary instructions which he requested; and its obligation not to impugn Burrows's credibility unnecessarily. As noted above, however, in light of the other cautionary instructions which were given—and to which Burrows did not object—Rodriguez was not entitled to the instruction. While courts have sometimes stated that an addict instruction might prudently be given even when not necessary, *see, e.g., Smith*, 692 F.2d at 661, those cases reckon without the fact that the witness may also have something to lose if the instruction *is* given—as is the case here, where the witness was the defendant. Where an instruction is unnecessary, a court is anything *but* prudent in giving it when doing so might cause collateral damage. Thus while the fact that the instruction was requested by Rodriguez may explain the overkill apparent in this case (i.e., three cautionary instructions pertaining to the testimony of a witness whose bias should have been apparent from the start), it ultimately does not alter our analysis.

**7.** We held in *Rubio–Villareal* that "the same harmless error standard applies to erroneous jury instructions as applies to constitutional errors. In both cases, the error must be 'harmless beyond a reasonable doubt.'" *Id.* Because we stated this holding in broad terms in *Rubio–Villareal*, we do not here distinguish between a case where the instructional error consists of a misstatement of the law and a case where the error consists of giving an instruction which lacks evidentiary foundation.

**8.** Matters might stand differently if the district court had erred in admitting *evidence* of Burrows's prior drug use, and thereby had improperly allowed the jury to learn that Burrows had at one time been an addict. *See United States v. Hill*, 953 F.2d 452, 458–59 (9th Cir.1991). But there is no contention here that the evidence of addiction was admitted erroneously. Burrows appeals only the instruction.

direction of the Riverside County Sheriff's Department and Deputy Vann. The district court instructed the jury as follows:

If you find that defendant Burrows was acting or reasonably believed he was acting on behalf of a law enforcement agency or officer when he engaged in the narcotics transaction charged in counts one and two of the indictment, then you must acquit him of these charges.

RT 6/9/92 at 155. Burrows contends that the district court erred by including the word "reasonably" in the instruction. According to Burrows, the public authority defense turns solely on a defendant's subjective beliefs. We review de novo the district court's formulation of the elements of a defense. *See United States v. Johnson,* 956 F.2d 197, 199 (9th Cir.1992).

Burrows relies heavily on Fed.R.Crim.P. 12.3, which requires defendants to give pretrial notice if they intend to raise a defense of "actual or believed exercise of public authority." Burrows argues that because Rule 12.3 refers only to belief, and not to reasonable belief, reasonableness is not an element of the public authority defense. This argument, however, misapprehends the nature and purpose of Rule 12.3. Rule 12.3 prescribes procedures which both the defense and the prosecution must follow whenever a defendant considers raising a public authority defense. The Advisory Committee Note to Rule 12.3 makes clear that the rule's purpose is to avoid unfair surprise to the government because the defense "remains an unusual defense" and "the government rarely will have reason to anticipate it." The Note further provides that Rule 12.3 embodies the same rationale as Rules 12.1 (Notice of Alibi) and 12.2 (Notice of Defense Based Upon Mental Condition).

We have never found that Rules 12.1 or 12.2 affect the substantive law of the insanity and alibi defenses, which of course were recognized long before the adoption of the Federal Rules of Criminal Procedure. Instead, we have noted that Rule 12.1 was intended to avoid unfair surprise and prevent trial delays due to an unexpected witness or alibi defense. *United States v. Dupuy,* 760 F.2d 1492, 1498 (9th Cir.1985). Similarly, we have said that the purpose of Rule 12.2 "is to give the Government time to prepare to meet a defendant's insanity defense." *United States v. Veatch,* 674 F.2d 1217, 1224–25 (9th Cir. 1981). Just as Rules 12.1 and 12.2 embody notice requirements but do not alter the substance of the alibi and insanity defenses, Rule 12.3 sets forth a notice requirement but does not limit or expand the public authority defense. *See also* Fed.R.Crim.P. 1 ("These rules govern the *procedure* in all criminal proceedings in the courts of the United States") (emphasis added); Fed.R.Crim.P. 2 (purpose of the Federal Rules of Criminal Procedure is "to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay"). To determine what the elements of the public authority defense are, we must look not to procedural rules but rather to the federal common law dealing with the substance of the defense.

We find considerable assistance in negotiating our way through this area from the roadmap recently provided by the Eleventh Circuit in *United States v. Baptista–Rodriguez,* 17 F.3d 1354 (11th Cir.1994):

Several defenses may apply when a defendant claims he performed the acts for which he was charged in response to a request from an agency of the government. . . .

First, the defendant may allege that he lacked criminal intent because he honestly believed he was performing the otherwise-criminal acts in cooperation with the government. "Innocent intent" is not a defense *per se,* but a defense strategy aimed at negating the *mens rea* for the crime, an essential element of the prosecution's case. . . .

A second possible defense is "public authority." With this affirmative defense, the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in a covert activity. The validity of this defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question. If the agent had no such

power, then the defendant may not rest on the "public authority" [defense]....

A third possible defense ... is "entrapment by estoppel." This defense applies when a government official tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime in reasonable reliance on the official's representation.

*Id.* at 1368 n. 18 (citations omitted).

Of the three defenses, this court has spoken most frequently about the third, entrapment by estoppel. With respect to this defense, we have rejected precisely the argument that Burrows makes with respect to the public authority defense. In *United States v. Lansing,* 424 F.2d 225 (9th Cir.1970), defendant was charged with refusing induction into the Armed Forces, and contended that the local board had misled him into failing to file for conscientious objector status by in effect denying his application before he had submitted it. *Id.* at 226. The case was tried to the bench; the district judge believed defendant's contention that he had been misled into failing to file, but nevertheless held that this was no defense. *Id.* In affirming the conviction, we held as follows:

> [I]t is clear that more is required than a simple showing that the defendant was as a subjective matter misled, and that the crime resulted from his mistaken belief.... When a defendant claims, as does appellant here, that his criminal conduct was the result of reliance on misleading information furnished by the government, society's interest in the uniform enforcement of law requires at the very least that he be able to show that his reliance on the misleading information was reasonable....

*Id.* at 227. Since *Lansing,* we have consistently stated that the entrapment by estoppel defense is available only when defendant can demonstrate a reasonable belief that his conduct was sanctioned by the government. *See United States v. Weitzenhoff,* 1 F.3d 1523, 1534 (9th Cir.1993), *as amended,* 35 F.3d 1275 (9th Cir.1994); *United States v. Clegg,* 846 F.2d 1221, 1223–24 (9th Cir.1988); *United States v. Tallmadge,* 829 F.2d 767, 774 (9th Cir.1987).

We conclude that the reasoning of *Lansing* applies no less to the defense of public authority than it does to the defense of entrapment by estoppel. *Lansing* held that "uniform enforcement of law" dictates a reasonableness limitation when the defendant purports to have relied on a government official who mistakenly misled him into committing an offense. The difference between the entrapment by estoppel defense and the public authority defense is not great. In the first, a government official commits an error and the defendant relies on it and thereby violates the law. *See United States v. Brebner,* 951 F.2d 1017, 1025 (9th Cir.1991) ("In short, the defense involves the 'concept of unintentional entrapment by an official who mistakenly misleads a person into a violation of the law' ") (quoting *Tallmadge,* 829 F.2d at 773). In the second, a government official makes some statement or performs some act and the defendant relies on it, possibly mistakenly, and commits an offense in so doing. If we hold defendants to a reasonableness standard even where the government has erred—and under *Lansing,* we do—there is no reason why defendants should be treated any more leniently when *their* mistakes are the source of error. Since under *Lansing* we do not require the government to pay for its mistake by losing a conviction, *a fortiori* we will not exact that price when the mistake is the defendant's. We adopt the standard set forth in *Lansing,* and hold that a defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere. This result makes our law internally consistent, and at the same time brings it into harmony with that of other courts which have addressed the issue. *See Baptista–Rodriguez,* 17 F.3d at 1368 n. 18, and authorities cited therein; *United States v. Lopez–Lima,* 738 F.Supp. 1404, 1410 (S.D.Fla.1990).

*Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), the case primarily relied on by Burrows, does not alter our conclusion. The defendant in *Cheek* was charged with willfully attempting to evade taxes and willfully failing to file tax returns. *Id.* at 194, 111 S.Ct. at 606–07 (citing 26 U.S.C. §§ 7201 and 7203). Given

this statutory language, and given "the complexity of the tax laws," the Supreme Court held that defendant was entitled to acquittal if he could prove that he believed that his actions did not violate the tax laws, even though the belief was unreasonable. *Id.* at 200, 111 S.Ct. at 609–10. We have declined, however, to extend *Cheek* beyond the context of criminal tax offenses. *United States v. Lorenzo,* 995 F.2d 1448, 1455 (9th Cir.) (refusing to apply *Cheek* in prosecution for conspiracy to send false documents to the IRS and for making false statements to the IRS), *cert. denied,* —— U.S. ——, 114 S.Ct. 225, 126 L.Ed.2d 180 (1993). *See also United States v. Hernandez–Urista,* 9 F.3d 82, 84 (10th Cir.1993) (refusing to extend *Cheek* into the area of drug offenses). The district court's instruction was correct.

### C. *Youthful Lack of Guidance*

■ Burrows requested that the district court depart downward on the grounds of youthful lack of guidance, a basis for departure established in *United States v. Floyd,* 945 F.2d 1096 (9th Cir.1991), *overruled on other grounds,* 990 F.2d 501 (9th Cir.1993). The district court declined to depart, concluding that *Floyd* had been "wiped out" by a 1992 amendment to the Sentencing Guidelines. U.S.S.G. § 5H1.12 (1992); *see* U.S.S.G.App. C, amendment 466. The district court also rejected the argument that § 5H1.12 should not be applied retroactively.

Subsequently, we have held that retroactive application of § 5H1.12 violates the ex post facto clause. *United States v. Johns,* 5 F.3d 1267, 1270–72 (9th Cir.1993). On this basis, the government concedes that this case should be remanded so that the district court may consider whether or not a departure for youthful lack of guidance is warranted.

### D. *Acceptance of Responsibility*

■ Burrows requested a downward adjustment pursuant to U.S.S.G. § 3E1.1, which provides for a two-level reduction if the defendant clearly demonstrates acceptance of responsibility, and a three-level reduction if, in addition, the defendant timely provides the government with complete information regarding his offense or with notice of his intention to plead guilty. The district court declined to grant the reduction.

The parties agree that the fact that Burrows went to trial does not preclude a downward adjustment. The question on appeal is whether or not Burrows accepted responsibility after conviction. We review for clear error. *United States v. Barron–Rivera,* 922 F.2d 549, 552 (9th Cir.1991).

We affirm the district court. Although Burrows wrote a letter to the court in which he expressed some remorse for his actions, he continued to maintain in post-trial proceedings that he was working for Deputy Vann; indeed, he claimed that Vann had perjured himself when he testified adversely to Burrows. Even after the trial, Burrows placed responsibility on others and accepted none himself.

Burrows contends on appeal that his "persistence in his belief that he was acting [as] an informant is not inconsistent with acceptance of responsibility for his action." Appellant's Opening Br. at 35. Burrows relies primarily on *Johnson,* where we concluded that defendants' request for a downward departure based on an incomplete duress defense was not incompatible with acceptance of responsibility. 956 F.2d at 903–05. In this case, however, Burrows continued to assert that he had a complete, not an incomplete defense. The fact that Burrows freely admitted committing the *actus reus* of the crime does not change the fact that he maintained even after trial that he had a complete defense based on his purported lack of *mens rea.* Burrows's position was incompatible with acceptance of responsibility. *See United States v. Molina,* 934 F.2d 1440, 1450–51 (9th Cir.1991) (defendant not entitled to acceptance of responsibility reduction where he admits that he possessed cocaine with intent to distribute it, but contends that he was entrapped by government agents). The district court did not err.

### E. *Substantial Assistance*

■ Under U.S.S.G. § 5K1.1, the district court may depart downward "[u]pon motion of the government stating that the defendant has provided substantial assistance in the

investigation or prosecution of another person who has committed an offense." The government in this case declined to make such a motion. Burrows argues that its failure to do so was unlawful.

■ In *Wade v. United States,* — U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), the Supreme Court held that § 5K1.1 invests the government with the power, not the duty, to seek a downward departure when a defendant has provided substantial assistance. *Id.,* — U.S. at ——, 112 S.Ct. at 1843. *Wade* also recognized certain limits to the government's power. In wielding it, a prosecutor is not permitted to act based on unconstitutional motives (such as discrimination on the basis of race), or arbitrarily (i.e., for reasons bearing no rational relation to any legitimate government purpose). *Id.,* — U.S. at ——, 112 S.Ct. at 1843–44; *United States v. Delgado–Cardenas,* 974 F.2d 123, 126 (9th Cir.1992).

■ We review for clear error factual questions concerning the government's motive and foundation for its refusal to request a departure. *See Delgado–Cardenas,* 974 F.2d at 126.

On appeal, Burrows stresses that he *did* assist the government: the DEA could not have caught Rodriguez and Paez—at least not immediately—if Burrows had not placed a call to Rodriguez after his arrest. Burrows also states that in post-arrest meetings with the U.S. Attorney's Office and the DEA, he provided information which led to the arrest of another methamphetamine trafficker. In light of the assistance he offered, Burrows reasons that the government's refusal to request a downward departure must have been the product of an unconstitutional motive— namely, the desire to punish him for going to trial.

The government acknowledges that Burrows provided some assistance, but maintains that, taken as a whole, that assistance was less than substantial because Burrows did not do other things the government asked him to do and believed he was capable of doing: testifying for the government, including testifying before a grand jury in order to help the government indict a coconspirator who ultimately was not prosecuted.

■ The government's explanation is sufficient under *Wade.* The government has presented reasons for declining to recommend the departure which are related to legitimate law enforcement purposes. *Wade,* — U.S. at ——, 112 S.Ct. at 1844; *see also United States v. Mena,* 925 F.2d 354, 356 (9th Cir.1991) (affirming district court's failure to grant a downward departure to defendant who had helped the government in the initial stages of its investigations but then refused to testify against the persons he had helped the government to capture). To require the government to show more would be inconsistent with the Sentencing Guidelines. Judicial review of substantial assistance issues is limited. Section 5K1.1 deliberately removes from judges the determination of whether or not a given quantum of assistance is substantial, and leaves the decision to prosecutors. *See United States v. Shrewsberry,* 980 F.2d 1296, 1297–98 (9th Cir.1992), *cert. denied,* — U.S. ——, 114 S.Ct. 120, 126 L.Ed.2d 84 (1993). In the absence of arbitrariness or unconstitutional motivation—neither of which Burrows has shown here—we must abide by the prosecutor's decision.

F. *Attempt to Challenge Prior Convictions*

■ At the conclusion of the sentencing hearing, Burrows attempted to file with the court a motion attacking the validity of his prior convictions. The motion was eventually filed, but the district court never ruled on it. Burrows contends on appeal that the district court was required to consider the motion under *United States v. Vea–Gonzales,* 999 F.2d 1326 (9th Cir.1993), and to make findings as to controverted facts pursuant to Fed.R.Crim.P. 32(c)(3)(D).

After the briefs in this case were filed, the Supreme Court decided *Custis v. United States,* — U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), in which it held that defendants have no statutory or constitutional right collaterally to attack, at sentencing, prior convictions used for sentence enhancement under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e). The *Custis* Court recognized a single exception to

the rule it announced: a defendant still has a constitutional right collaterally to attack a prior conviction ostensibly obtained in violation of the defendant's right to appointed counsel under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Custis*, —— U.S. at ——, 114 S.Ct. at 1738.

Burrows, unlike the defendant in *Custis*, was sentenced under the Sentencing Guidelines, not the ACCA. Burrows is correct that we held in *Vea–Gonzales* that a defendant has a constitutional right collaterally to attack prior convictions used for sentence enhancement under U.S.S.G. § 4B1.1, the Sentencing Guidelines' career offender provision. 999 F.2d at 1333–34. *Custis*, however, decided the same constitutional question which we decided in *Vea–Gonzales*—and came out the other way. —— U.S. at ——, 114 S.Ct. at 1738. Thus as far as its constitutional holding goes, *Vea–Gonzales* is no longer good law.

This leaves the question of whether the Sentencing Guidelines themselves, unlike the ACCA, provide an independent basis for bringing a collateral attack. We answered this question very recently in the negative. In *United States v. Fondren*, 32 F.3d 429 (9th Cir.1994), we held that the argument that the Sentencing Guidelines provide an independent source of authority for a collateral challenge is foreclosed by Application Note 6 to U.S.S.G. § 4A1.2, which states that the guideline governing computation of criminal history points "do[es] not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law." *Fondren*, 32 F.3d 429.[9] Several other circuits have reached similar results. *United States v. Jones*, 28 F.3d 69, 70 (8th Cir.1994) (applying *Custis* to bar defendant from collaterally

attacking prior convictions used for purposes of sentence enhancement under U.S.S.G. § 4B1.1); *United States v. Jones*, 27 F.3d 50, 52 (2d Cir.1994) (same); *see also United States v. Killion*, 30 F.3d 844, 846 (7th Cir. 1994) (stating in dicta that, for purposes of applying *Custis*, "it [is] difficult to detect a principled distinction" between the ACCA and U.S.S.G. § 4B1.1).[10]

We conclude that Burrows had no right conferred by the Sentencing Guidelines to attack his prior convictions in his sentencing proceeding and no constitutional right to attack any prior convictions save those which were obtained in violation of *Gideon*.

Burrows argues on appeal that "many" of his prior convictions were the result of guilty pleas entered without benefit of counsel. However, we have located only one conviction in which counsel was not either present or waived. That conviction, for this very reason, was stricken by the district court. Thus none of the disputed prior convictions in this case comes under the *Gideon* exception. We conclude that with respect to the sentence imposed under the Sentencing Guidelines, the district court did not err in refusing to allow a collateral attack.

We note that the presentence report also relied on two of Burrows's convictions for the purpose of determining the statutory mandatory minimum. Under 21 U.S.C. § 841(b)(1)(A), the 10 year mandatory minimum is replaced by a 20 year minimum if the defendant violates the statute "after a prior conviction for a felony drug offense has become final." The presentence report concluded that the statutory minimum was 20 years, PSR at ¶ 107, listing two prior felony drug convictions. *Id.* at ¶¶ 81–87.

---

9. Unlike Burrows, the defendant in *Fondren was* sentenced under the ACCA. *Id.* But *Fondren* is nevertheless binding on us, because the court there considered the Sentencing Guidelines as a source of authority *separate* from the ACCA— which is precisely what we are required to do here.

10. *Jones* (8th Cir.), *Jones* (2d Cir.), and *Killion* all involved sentencing enhancement under U.S.S.G. § 4B1.1, the Guidelines' career offender provision. Burrows's prior convictions were not used to place him in a Guidelines career offender

category, but rather more generally to compute his criminal history points under U.S.S.G. § 4A1.1. Computation under both guidelines, however, is controlled by the provisions of § 4A1.2 ("Definitions and Instructions for Computing Criminal History"). U.S.S.G. § 4B1.2, comment. (n. 4). In particular, both § 4A1.1 and § 4B1.1 must be applied in light of Application Note 6 to § 4A1.2, which states that § 4A1.2 does not in itself confer any right to bring a collateral attack. Thus the cases decided under § 4B1.1 are equally applicable under § 4A1.1.

Both *Custis* and the commentary to the Sentencing Guidelines have noted that 21 U.S.C. § 851 confers an independent statutory right to attack collaterally prior felony convictions when the defendant is convicted under § 841. *Custis,* —— U.S. at ——, 114 S.Ct. at 1737; U.S.S.G. § 4A1.2, comment. (n. 6). Thus under § 851, Burrows *was* entitled to challenge the drug felony convictions relevant under § 841. But because the sentence the district court imposed was the sentence computed under the Guidelines rather than the sentence computed under the statute, the point is moot. *See United States v. McDougherty,* 920 F.2d 569, 574 (9th Cir. 1990), *cert. denied,* 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991).

We remand the case to the district court so that the court may consider whether a downward departure based on youthful lack of guidance is warranted. We affirm in all other respects.

**AFFIRMED IN PART; REMANDED IN PART.**