NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0121n.06

No. 08-2111

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Feb 22, 2011**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| DERIC D. BALARK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before:  BOGGS and COOK, Circuit Judges; and CARR, District Judge. [*]

**JAMES G. CARR, Senior District Judge.** Defendant Deric D. Balark appeals his

conviction and mandatory life sentence for conspiracy to distribute and possess with intent to

distribute cocaine, cocaine base, and other drugs.  The sole issue on appeal is whether the district

court's jury instructions were so confusing or inadequate as to constitute plain error.

For the reasons below, we **AFFIRM** the district court's judgment.

**BACKGROUND**

On November 7, 2007, a grand jury returned a superseding indictment charging Balark and

five co-defendants with conspiracy to distribute and possess with intent to distribute five kilograms

or more of cocaine, fifty grams or more of cocaine base, heroin, and marijuana in violation of 21

_____

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District
of Ohio, sitting by designation.

U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii) and (iii), 841(b)(1)(C), and 841(b)(1)(D). The indictment listed ten other co-conspirators.

Four defendants pled guilty pursuant to plea agreements. Balark and Anthony Lloyd went to trial.

Before trial, the government submitted proposed jury instructions. Balark's and Lloyd's attorneys accepted these instructions without objection. Neither tendered any proposed instructions.

The eight-day trial began April 22, 2008. Eighteen witness testified against Balark, stating they had purchased cocaine from him or had seen him cooking or selling cocaine. Most of these witnesses had multiple prior state court convictions; several were in prison for federal drug-trafficking offenses. Many witnesses anticipated that the government would move to reduce their sentences in return for their trial testimony.

Two co-defendants, Larry Hooks and Sandra Jones, testified for the government. During Hooks's direct examination, the prosecutor asked:

Q.     In that agreement, did you promise to cooperate with the United States?

A.     Yes.

Q.     And what— In your mind, what does cooperation mean?

A.     To tell my part in this conspiracy, to tell the truth.

Q.     All right. And what is your understanding if you fail to tell the truth?

A.     That my plea will be pulled back and I will be charged with the original crime.

Q.     And what else could you be charged with if you were to lie?

A.     Perjury.

2

The government also established that Hooks hoped the prosecutor would file a motion to reduce his sentence.

A similar colloquy occurred during Jones's direct examination:

Q.    And we came to a plea agreement; is that correct?

A.    Yes.

Q.    And as part of your agreement, what is your understanding that you have to do?

A.    Tell what I know.

Q.    And is that tell the truth?

A.    Right.

Q.    And in consideration for that, I let you plead to a charge that is a lesser charge than you were originally charged with, correct?

A.    Yes.

The government introduced Hooks's and Jones's plea agreements without objection. Defense counsel cross-examined both witnesses about their motivation to testify and benefits they expected to receive.

Seven unindicted co-conspirators also testified as government witnesses against Balark. Eleven other witnesses provided additional information regarding both defendants' involvement in the Benton Harbor drug trade.  Most of these witnesses were lower-level drug dealers who said they bought drugs from Balark or Lloyd.

Two witnesses, Collins Booker and Boston Sams, admitted being crack users and addicts. Both had given information to law enforcement about their drug sources after being arrested.

During closing arguments, the prosecutor acknowledged that the case was witness intensive and told the jury, "You get to decide, you are free to believe everything that a witness says, some of what that witness says, or nothing that witness says at all. Again, you are the judge of the facts, you decide how credible the witnesses are."

The prosecutor made one reference during closing argument to the cooperation agreements:

> [Tommy Ellis] worked out a plea agreement with the state involving the crack he had in his possession, and then he went to the grand jury, and he was told if he tells the truth, nothing would be used against him, that he would be a witness and not a defendant. And you are going to be instructed by the Judge that there is absolutely nothing wrong with that. That's [sic] perfectly acceptable for the government to offer deals to cooperate.

Balark's counsel characterized the government's witnesses as "convicted drug dealers" and urged the jury to "think about whether they are credible or not, think about why they are here, what their [sic] benefitting." He also argued, "All of these guys are here to help themselves out. And maybe Dirty M, our man Mr. Carter, said it best, let's fry the guy from Chicago, he is not one of us. We don't have any loyalty to him."

Balark's attorney pointed out that several witnesses had been in the same jails and suggested, "They get their stories together. They almost sound like they shared scripts at times, didn't they?" Lloyd's counsel closed along similar lines, describing the cooperating witnesses as "murderers, attempted murderers, robbers, users, abusers, manipulators, perpetrators and predators" whom the government had given "a license to lie."

After closing arguments, the judge instructed the jury. He reminded the jurors of their duty to find the facts and to follow the law. The judge explained, "The lawyers have talked about the law

4

during their arguments. But if what they said is different from what I say, you must follow what I say. What I say about the law controls."

The judge advised that the indictment was not evidence of guilt, and the defendants were presumed to be innocent unless and until the government presented evidence overcoming the presumption of innocence.

The judge explained that the evidence in the case included only what the witnesses said while testifying under oath, the exhibits in evidence, the stipulations of the lawyers, and the facts judicially noticed. The judge emphasized that "[n]othing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are also not evidence. My legal rulings are not evidence. And my comments and questions are not evidence."

The judge also addressed findings of credibility of the witnesses, telling the jurors to:

Ask yourself if the witness had any relationship to the government or the defendant or anything else to gain or lose from the case that might influence the witness's testimony.

Ask yourself if the witness had any bias or prejudice or reason for testifying that might cause the witness to lie or to slant the testimony in favor of one side or the other.

The judge specifically addressed the testimony of the government's cooperating witnesses:

You have heard the testimony of numerous witnesses who the government has promised will not be prosecuted for additional crimes in exchange for their cooperation. It is permissible for the government to make such a promise. But you should consider this testimony with more caution than the testimony of other witnesses. An addict may have a constant need for drugs, and for money to buy drugs, and he may also have— and may also have a greater fear of imprisonment because his supply of drugs may be cut off. Think about these things and consider whether their testimony may have been influenced by the government's promise.

Do not convict the defendant based on the unsupported testimony of such a witness standing alone, unless you believe their testimony beyond a reasonable doubt.

5

After instructing the jury, the judge called for a sidebar to ask counsel if there were any objections to the jury instructions. There were none.

The jury returned guilty verdicts for both defendants for conspiracy to distribute and to possess with intent to distribute a controlled substance. The jury found Balark conspired to distribute and to possess with intent to distribute five kilograms or more of cocaine, and fifty grams or more of cocaine base.

On August 18, 2008, the court sentenced Balark to a mandatory term of life imprisonment. He filed a timely notice of appeal.

## DISCUSSION

### I. Standard of Review

A reviewing court may reverse a judgment only if the jury instructions, viewed as a whole, were confusing, misleading, and prejudicial. *United States v. Gray*, 521 F.3d 514, 540 (6th Cir. 2008). Failure to object to instructions waives the right to assert error on appeal. *United States v. Hughes*, 505 F.3d 578, 597 (6th Cir. 2007). Thus, we can review the jury instructions in this case only for plain error. Fed. R. Crim. P. 52(b). *E.g.*, *United States v. Thomas*, 11 F.3d 620, 629 (6th Cir. 1993). Similarly, where counsel fails to request a jury instruction, we review the omission for plain error. *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006).

To demonstrate plain error, Balark must show: "1) an error 2) that is plain and 3) that seriously affects his fundamental rights." *United States v. Aaron*, 590 F.3d 405, 408 (6th Cir. 2009) (citing *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009)). If he satisfies these conditions, this court has discretion to "correct the error only if the error seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.* "An instruction is not plainly erroneous unless

6

there was an egregious error, one that directly leads to a miscarriage of justice." *United States v. Yang*, 281 F.3d 534, 551 (6th Cir. 2002); *United States v. King*, 169 F.3d 1035, 1040 (6th Cir. 1999) (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988)).

Balark asserts three bases for finding plain error: 1) the addict and accomplice/informant instructions were erroneous, confusing, and misleading; 2) the court failed to provide a cautionary instruction regarding "truthful testimony agreements"; and 3) the jury instructions denied his right to have the jury instructed on his theory of the case.

## II. Addict and Accomplice-Informant Testimony Instructions

Balark contends that the district court mistakenly gave an addict-informant instruction and failed to tell the jury to view accomplice testimony with special caution.

Balark relies on a Ninth Circuit case, *United States v. Burrows*, 36 F.3d 875 (9th Cir. 1994), to support his claim that it is error to give an addict instruction absent evidence that witnesses were drug addicts at the time of trial.

Balark misreads *Burrows* and the record.

In *Burrows*, the witness to whom the addict instruction related was the defendant. *Id.* at 878-880. The court noted that there was no indication that the defendant was a current drug addict, rather than a recovering addict. *Id.* The court found that the instruction risked unfairly prejudicing the jury against the defendant, but concluded the error was harmless. *Id.* at 880.

In this case, the record showed that two witnesses, Collins Booker and Boston Sams, were addicts when they were arrested and began cooperating with law enforcement. They, not the defendant, as in *Burrows*, were the subjects of the addict-informant instruction.

7

The reading of the addict-informant instruction thus was proper.  This is so despite Balark's contention that Booker and Sams were so far removed from the street life that the fear of losing their drug supply could no longer affect their testimony.  In any event, this instruction, which at most cast a shadow over these two witnesses, and not the defendant, posed no danger of prejudice to him.

Balark claims the district court, instead of giving the addict-informant instruction, should have read the Sixth Circuit's accomplice-informant instruction.[1]  He asserts that absent this exact instruction, the jury may have given co-conspirator testimony improper weight and decided his guilt based on co-conspirator admissions of guilt.

Neither the government nor defense counsel requested an accomplice-informant instruction. The district court's instruction to the jury nonetheless communicated much, though certainly not all, that is in the Pattern Instruction.  The district judge told the jurors:

> You have heard the testimony of numerous witnesses that before this trial were convicted of a crime.  This earlier conviction was brought to your attention only as a way of helping you decide how believable their testimony was.  Do not use it for any other purpose. It is not evidence of anything else.

The court pointed out the relationship of a witness's conviction to credibility.  It made clear that evidence about the witnesses' guilty pleas was not evidence of anything else.  This necessarily encompasses the defendant's guilt.

---

[1] Sixth Circuit Pattern Criminal Jury Instruction 7.08 states:
　　(1) You have heard the testimony of _____. You have also heard that he was involved with the same crime that the defendant is charged with committing. You should consider _____'s testimony with more caution than the testimony of other witnesses.
　　(2) Do not convict the defendant based on the unsupported testimony of such a witness, standing alone, unless you believe his testimony beyond a reasonable doubt.
　　(3) The fact that _____ has pleaded guilty to a crime is not evidence that the defendant is guilty, and you cannot consider this against the defendant in any way.

Nonetheless, Balark, citing decisions by the Second and Tenth Circuits, claims the court committed plain error by failing to give Pattern Instruction 7.08.

In *United States v. Jones*, 468 F.3d 704, 709–10 (10th Cir. 2006), three co-defendants changed their pleas to guilty after six days of testimony and testified against the defendant. The Tenth Circuit noted that a district court may inform the jury of the change of plea and allow this testimony, but "[*i*]*n such cases* . . . cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical." *Id.* at 709 (emphasis added). The need for this cautionary instruction is indeed critical where the co-defendants' guilty pleas are so squarely before the jury.

The situation in *Jones* bears little resemblance to our case. Here, the district judge expressly notified the jury of the restrictions on its consideration of the witnesses' guilty pleas. The Sixth Circuit, moreover, has found that absent extraordinary circumstances (such as those in *Jones*), more detailed instructions are not necessary where the court, as here, otherwise adequately instructed the jury to treat the witnesses' testimony with caution for other reasons. *E.g.*, *United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993).

In the Second Circuit opinion to which the defendant points, *United States v. Prawl*, 168 F.3d 622, 627 (2d Cir. 1999), counsel had requested and the court had declined to give an instruction telling jurors not to consider a co-conspirator's guilty plea as evidence of the defendant's guilt. Thus, in light of counsel's request and objection, the court applied a different standard of review than the plain-error standard we apply here.

This case more resembles this court's decision in *United States v. Wheaton*, 517 F.3d 350 (6th Cir. 2008), which likewise involved plain-error review. There, the defendant challenged jury

9

instructions nearly identical to those at issue in this case, arguing that the court should have highlighted compensation paid to informants and included the accomplice instruction. *Id.* at 363.

The court in *Wheaton* cited the usage notes for the Pattern Instruction 7.08, which explicitly state an accomplice instruction "is not necessary if the jury has been instructed to treat the witness's testimony with caution for other reasons." *Id.* The court found no plain error in the failure to give an unrequested accomplice-informant instruction because the district court "clearly instruct[ed] the jury that it was to view their testimony 'with more caution than the testimony of other witnesses,'" *Id.*

As noted, much that Balark claims was missing was, in essence, in the court's instruction. Jurors were on notice about the limited utility of proof of witnesses' pleas—namely, to assess credibility alone. The instructions, taken as a whole, fairly and adequately informed the jury of the various considerations that it should take into account in weighing testimony. Thus, it is not error, much less plain error, for a court not to highlight more explicitly the credibility problems inhering in accomplice testimony.

Balark's final contention on this point is that the district court plainly erred by failing to instruct the jurors that some of the witnesses testified under a grant of immunity and they should not convict based on those witnesses' testimony unless they believed it beyond a reasonable doubt.

Were there no other instructions describing grounds for assessing credibility, the defendant's contention might have some merit. The district court, however, told the jurors they had "heard the testimony of numerous witnesses who the government has promised will not be prosecuted for additional crimes in exchange for their cooperation" and they should "consider this testimony with more caution than the testimony of other witnesses."

10

The district court further instructed the jury, "Do not convict the defendant based on the unsupported testimony of such a witness standing alone, unless you believe their testimony beyond a reasonable doubt."

These instructions gave the jury ample guidance about evaluating the credibility of the government's witnesses. The district court's instructions on addict and accomplice/informant testimony were not erroneous, prejudicial, or misleading. Its failure, in the face of silence on the part of defense counsel, to request an accomplice-informant instruction also was not plain error.

### III. Implicit Vouching or Bolstering

Balark alleges that the district court plainly erred by failing to provide cautionary instructions regarding the prosecution's use of witness plea agreements, proffers, immunity grants, and the expectation of future 5K1.1 or Rule 35 motions. Balark does not appeal on grounds of improper vouching, but rather argues that repeated references to the requirement that witnesses "testify truthfully" required, at a minimum, a cautionary instruction that the jury—and not the government—determines the credibility of each witness.

As the Sixth Circuit recognized in *United States v. Trujillo*,"[i]mproper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness' credibility thereby placing the prestige of the office of the United States Attorney behind that witness." 376 F.3d 593, 607 (6th Cir. 2004) (quoting *United States v. Martinez*, 253 F.3d 251, 253–54). Improper vouching includes both "blunt comments [and] comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *Id.* at 607–608. Similarly, "bolstering occurs where the prosecutor implies that the witness' testimony is corroborated by

11

evidence known to the government but not known to the jury." *Id.* at 608 (quoting *Martinez*, 253 F.3d at 253–54).

The government has the right to inform the jury of agreements made with the witnesses and their obligations under such agreements. *E.g.*, *United States v. Townsend*, 796 F.2d 158, 162–63 (6th Cir. 1986). Referring to such agreements in appropriate circumstances allows the prosecutor to deflect defendant's use of a plea agreement to attack the witness's credibility. *United States v. Tocco*, 200 F.3d 401, 416–17 (6th Cir. 2000).

Although the government may present evidence about its witnesses' plea agreements, including the agreements themselves and the *quid pro quo* that testimony be truthful, the government may not make "unnecessarily repetitive references to truthfulness." *United States v. Thornton*, 197 F.3d 241, 252 (7th Cir. 1999). In *Thornton*, the Seventh Circuit expressed concern about the duplicative admission of proffer letters and plea agreements where those documents contained repeated references to the requirement of truthfulness. *Id.* The court warned prosecutors to "avoid unnecessarily repetitive references to truthfulness," noting "[t]here may come a day in another case when we find excessive the admission of proffer letters." *Id.*

Excessive references to a witness's agreement to tell the truth—particularly where the consequences of lying are highlighted—can have the same harmful effects as a prosecutor's personal observation or opinion of credibility or implication of corroborating evidence. The implication of such references to truthfulness is clear: the witness testifying has not lost the benefit of the bargain, so the prosecutor would not allow the testimony if she did not believe he was telling the truth. Cross-examination cannot effectively dispel this implication, as pointing out the benefits to show motive to lie simply confirms the fact that the witness is still receiving the benefit of the bargain.

12

Repeating, as with a drumbeat of increasing intensity, the truthfulness provision witness by witness by witness, and also introducing plea agreements, proffers, and Rule 35 motions, might drown out other evidence. But this was not a case in which the prosecutor, in effect, played Ravel's *Bolero*.

The prosecutor featured the truthfulness provisions of plea agreements during direct examination of two of the witnesses, Hooks and Jones. In closing, the prosecutor did not refer to witnesses' agreements to cooperate truthfully, but instead emphasized that it was the jury's role to judge the credibility of the witnesses.

In *Trujillo*, in contrast, the prosecutor not only elicited testimony from witnesses regarding their agreements to tell the truth, but also stated in her closing that those same witnesses "promised to be truthful and provide complete information." 376 F.3d at 608. One of the witnesses volunteered that she would be willing to take a polygraph test to prove her truthfulness.

The prosecutor in *Trujillo* came far closer to making excessive reference to truthfulness than the prosecutor here. Even so, the court in *Trujillo*, reviewing, as we do, for plain error, found no improper vouching or bolstering. 197 F.3d at 252.

The prosecutor's references to truthfulness in this case were not so repetitive as to constitute improper vouching. Plea agreements cut both ways and can offer useful opportunities for impugning witnesses who have signed them. *See United States v. Townsend*, 796 F.2d 158, 163 (6th Cir. 1986). The prosecutor's remarks and exhibits here served only to maintain the balance.[2]

---

[2] Defense counsel suggested at oral argument that juries be instructed that "the government has no special knowledge of the witness's truthfulness" where plea agreements with truth provisions have been introduced into evidence. In such cases, it is good practice for a district judge to deliver such a cautionary instruction, explaining that "truthful testimony" provisions in plea agreements are not proof and should not be considered as proof that a witness is in fact testifying truthfully in whole

13

The district court's instructions clearly conveyed that the determination of witness credibility belongs to the jury alone. Nothing in the trial record indicates error, let alone a plain error affecting the defendant's substantive rights or the fairness, integrity, or public reputation of the judicial process.

## IV. Defense Theory

Balark argues that the district court's instructions denied him his right to have the jury instructed as to his theory of the case. That theory, as clearly expressed in his counsel's closing statement, is that "all of the cooperating witnesses from Benton Harbor, many of whom were housed together, ganged up on the outsider from Chicago . . . and fabricated their testimony." Counsel presented this theory during opening statement, cross-examinations, and closing argument. Balark's counsel did not request a jury instruction on this theory.

Balark now takes issue with the district court's instruction regarding the lawyer's arguments. The district court instructed the jury, "The lawyers have talked about the law during their arguments. But if what they said is different from what I say, you must follow what I say. What I say about the law controls." Balark contends that this instruction impermissibly minimizes the significance of any argument or claim made by defense counsel.

The instruction, taken directly from the Sixth Circuit's Pattern Jury Instruction 1.02, is an indisputably correct statement of the law. It did not undercut the ability of Balark's attorney to present his theory of the case. It fairly and adequately instructed the jury on the applicable law.

or in part.

Had defense counsel requested such an instruction, and had the district court refused to give it, a different result may have been warranted. But although it might be good practice to offer such an instruction, the district court's failure to do so *sua sponte* does not constitute error in this case.

14

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.