We review claims of insufficient evidence to determine whether, taking the evidence in the light most favorable to the prosecution, any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000). We hold that the interstate commerce nexus is sufficiently established in the record. Section 1832(a) requires that the trade secret in question be "related to or included in a product that is produced for or placed in interstate or foreign commerce." The patent application given by Lee to the Yangs involved an Avery product generating sales of $75-$100 million the previous year, and related to products produced and sold in at least the United States and Canada. Taken as a whole, the testimony was sufficient to permit a reasonable juror to find that Avery is an international company with sales across the world of the product to which the patent application was attached.[4]

Sally's claim that she was not knowingly involved in a conspiracy cannot withstand the evidence in the record that she had, on numerous occasions, received confidential information from Lee and that she gave Lee payment for his services. A jury could permissibly conclude from this evidence, combined with her actions in the hotel room, that she was knowingly involved in the conspiracy to steal Avery's trade secrets. The claims of insufficient evidence are without merit.

### CONCLUSION

For all of the reasons set out above, we AFFIRM the judgments of conviction; we VACATE the sentence of each of the Defendants and REMAND for resentencing consistent with this opinion.

---

[4]This is a permissible inference the jury could have made considering the testimony of witnesses that Avery had sought patents in Europe for the product at issue here.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0062P (6th Cir.)
File Name: 02a0062p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA (00-3150),

      *Plaintiff-Appellee/ Cross-Appellant,*

      *v.*

PIN YEN YANG, a/k/a P. Y. YANG, a/k/a P. Y. YOUNG; FOUR PILLARS ENTERPRISE COMPANY, LTD. (00-3125); HWEI CHEN YANG, a/k/a HUEN CHAN YANG, a/k/a SALLY YANG, a/k/a SALLY YOUNG (00-3126),

      *Defendants-Appellants/ Cross-Appellees.*

Nos. 00-3125/ 3126/3150

Appeal from the United States District Court for the Northern District of Ohio at Youngstown. No. 97-00288—Peter C. Economus, District Judge.

Argued: June 5, 2001

Decided and Filed: February 20, 2002

Before:  BATCHELDER and MOORE, Circuit Judges;
BERTELSMAN, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Nancy Luque, Eric A. Dubelier, REED SMITH, LLP, Washington, D.C., Ralph E. Cascarilla, WALTER & HAVERFIELD LLP, Cleveland, Ohio, for Appellants. Kirby Heller, UNITED STATES DEPARTMENT OF JUSTICE, CRIMINAL DIVISION APPELLATE SECTION, Washington, D.C., for Appellee. **ON BRIEF:** Nancy Luque, Eric A. Dubelier, REED SMITH, LLP, Washington, D.C., Ralph E. Cascarilla, Darrell A. Clay, WALTER & HAVERFIELD LLP, Cleveland, Ohio, for Appellants. Kirby Heller, UNITED STATES DEPARTMENT OF JUSTICE, CRIMINAL DIVISION APPELLATE SECTION, Washington, D.C., for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.    The Defendants, Pin-Yen Yang (Yang), his corporation Four Pillars Enterprise Company, Ltd. (Four Pillars), and Yang's daughter Hwei Chen Yang (Sally), were charged by indictment with thirteen counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, three counts of money laundering in violation of 18 U.S.C. § 2315, and one count of attempted theft of a trade secret and conspiracy to commit theft of a trade secret in violation of the Economic Espionage Act of 1996 (EEA), 18 U.S.C. § 1832.

_____

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

482, 488 (6th Cir. 1991).  We are satisfied that the district court did not abuse its discretion.  The district court properly found that the evidence redacted by Lee from the letters, highlighting his criminal involvement, was not material to the Defendants' convictions. Further, the court rightly concluded, in light of the large volume of evidence of guilt and Lee's already largely discredited testimony, that the excised portions of the letters would simply be cumulative and further impeach Lee's credibility.  With reference to Lee's medical history, since there was no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," the district court properly denied the Yangs' motion for a new trial. *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (internal quotations and citation omitted).

The Defendants raised no objection at trial to the court's jury instruction on the meaning of "steal."  We therefore review this claim for plain error. *United States v. King*, 169 F.3d 1035, 1040 (6th Cir. 1999).  "An instruction is not plainly erroneous unless there was 'an egregious error, one that directly leads to a miscarriage of justice.'" *Id.* (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir.1988)).  We find no plain error.  Taken as a whole, the jury instructions fairly and adequately instructed the jury on the issues and the applicable law, and therefore, if there was any error in this particular instruction, it did not lead to a miscarriage of justice.

Finally, the Defendants assert that there was insufficient evidence to support their convictions. First, the Defendants claim that the proofs did not establish that the trade secret in question, the Avery patent application, was related to interstate commerce as is required by §1832(a). Second, Sally Yang contends that as to her, there was insufficient evidence that she knowingly joined a conspiracy or attempted to steal a trade secret.

Yangs' criminal trial, and that Lee suffered from mental health problems. After his arrest, Lee either began or continued to suffer from mental health problems. He visited a doctor and went to counseling for his difficulty in coping with the change in his circumstances caused by his arrest. As part of his cooperation with the FBI, Lee had given the Government all of his files, including his correspondence with the Yangs. Some of the documents Lee gave to the FBI were incomplete because Lee had removed pages that tended to incriminate him. During trial Lee authenticated some of the incomplete documents that he had given the Government. Later, Lee admitted in a related civil trial that he had excised portions of the letters. The Yangs, however, had copies of the original, unaltered, letters from Lee because Lee had mailed those letters to the Yangs years earlier.

The district court held a hearing on the Yangs' claims and concluded that, as to the changed documents, the evidence withheld by Lee was not newly discovered, since with due diligence the Yangs could have found the originals in their own records; it related to fraud counts on which the Defendants had been acquitted, but was not material to the trade secret counts and was not likely to produce an acquittal. The court further concluded that evidence of Lee's mental problems would not have changed the outcome of the trial, the mental health records contained no exculpatory information, and absence of the evidence did not affect the fairness or integrity of the trial. The court ruled that the Government had committed no *Brady* violation and that a new trial was not warranted.

We review for abuse of discretion the district court's denial of a motion for new trial. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). To prevail on appeal the Yangs must show that: "(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce acquittal." *United States v. Seago*, 930 F.2d

Prior to the conclusion of the trial, the district court disposed of all but one of the fraud counts, and all of the money laundering and receipt of stolen property counts. On April 29, 1999, the jury found the Defendants guilty of attempt and conspiracy to commit theft of a trade secret, and acquitted them on the remaining fraud charge.

During the course of the proceedings the Defendants made numerous motions, including, among others, pretrial motions to suppress evidence, a *Batson* challenge to the composition of the jury, and motions for mistrial on several grounds, all of which the district court denied. In September, 1999, the Defendants moved for a new trial and renewed their motions for mistrial. After an evidentiary hearing on these motions, the court denied each of them. On January 5, 2000, the Defendants were sentenced. The court departed downward fourteen levels in establishing the offense level for each of the Defendants; the court, however, departed upward in sentencing Four Pillars, imposing the statutory maximum fine of $5,000,000.00. On appeal the Defendants appeal the denial of their pretrial, trial and post-trial motions and the district court's upward departure in imposing Four Pillars' fine. The Government appeals the district court's downward departure for each Defendant.

The principal issues before us in this appeal are the Defendants' contention that under the circumstances of this case it was legally impossible for them to have committed the crimes of which they were convicted; Four Pillars' contention that the district court erred in departing upward in imposing sentence; and the Government's contention that the district court erred in departing downward in setting the offense levels of the Defendants. Additionally, the Defendants challenge the district court's denials of a motion to suppress video- and audiotape evidence, a *Batson* challenge, a motion to prohibit contact between prosecutors and witnesses, motions for mistrial because of alleged prosecutorial misconduct, and motions for new trial on grounds of newly discovered evidence. Finally, the Defendants claim that the

district court's instruction on the meaning of "theft" was plainly erroneous and that their convictions were not supported by the evidence. We conclude that the defense of impossibility is not available to the Defendants; that the district court erred in sentencing all of the Defendants; and, finally, that none of the remaining assignments of error has merit. We will therefore affirm the judgments of conviction but vacate the sentences and remand for further proceedings consistent with this opinion.

## I. Factual Background

Four Pillars is a Taiwanese company owned by Yang. Avery Dennison Inc. (Avery), an American corporation, is one of Four Pillars' chief competitors in the manufacture of adhesives. Dr. Victor Lee, a native of Taiwan, was employed by Avery in 1986 to do scientific research into adhesives. At all times relevant to this case, Lee was an employee of Avery. In 1989, while Lee was making a presentation in Taiwan, Four Pillars vice-president C.K. Kao introduced him to Yang and Sally. Yang asked Lee to serve as a "consultant" to Four Pillars and offered him compensation of $25,000.00 for a year of consultation. The parties agreed that they would keep the arrangement secret. Lee received a check, made out to his sister-in-law, from Four Pillars shortly thereafter.

After his return to the United States, Lee corresponded with Yang and Sally, describing the information he would provide them and indicating that some of the information Lee intended to provide the Yangs was confidential to Avery. On August 8, 1989, Lee sent two confidential Avery rheology[1] reports to the Yangs. The Yangs responded that the information was very helpful.

Lee continued to supply the Yangs with confidential information including information that Four Pillars could use

---

[1]Rheology is the study of adhesives.

unauthorized juror contact "created actual juror bias." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997). The Yangs' failed to offer evidence sufficient to support a finding that the alleged juror contact created the "obvious potential" to affect the verdict. We therefore reject their claim that the Government engaged in improper jury contact. *Id.*

Prosecutor comments and actions must be taken in context. *United States v. Bond*, 22 F.3d 662, 667-68 (6th Cir. 1994). Alleged misconduct that is not flagrant seldom constitutes reversible error. *United States v. Brown*, 66 F.3d 124, 127-28 (6th Cir. 1995). Prosecutorial conduct is flagrant if it tends to mislead a jury or prejudice the defendant, if the comments were extensive and not isolated, and if the comments were deliberate. *Id.* at 127. If conduct is not flagrant this court will not reverse unless "(1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, *and* (3) the district court failed to give a curative instruction." *Id.* (emphasis added).

After thoroughly reviewing the records, the parties' briefs, and the district court's rulings this court does not find that the district court abused its discretion. On numerous occasions, the court reminded the jury, in response to the Yangs' objections, that the jury could consider only the evidence in the record and could not consider as evidence what the attorneys said. Even assuming the comments objected to were improper, they were not flagrant and certainly did not prejudice the trial. *See Bond*, 22 F.3d at 667 (ruling that prosecutor statements do not merit reversal of the district court unless they permeate the entire trial making it unfair). The comments at issue here were isolated and inadvertent common usages. Taken in context, with the overwhelming proof of the Yangs' guilt, and the court's instruction, the comments do not require a new trial.

The Defendants also moved for a new trial based on newly discovered evidence of Lee's admission in a civil deposition that he had altered a document he had authenticated for the

The Yangs argue that the district court erred when it denied their motion to prevent the prosecutors from having contact with the witnesses whom the prosecution was allegedly coaching. The grant or denial of such a motion is within the sound discretion of the district court. *United States v. DeJongh*, 937 F.2d 1, 3 (1st Cir. 1991) (citing *Geders v. United States*, 425 U.S. 80, 87 (1976)). The Yangs cross-examined the allegedly coached witnesses and commented on the alleged coaching to the jury in their closing arguments. *See United States v. Malik*, 800 F.2d 143, 149 (7th Cir. 1986) (finding that cross-examination and comment during closing is generally sufficient to dispel any ill effects caused by the coaching). After reviewing the record, we find that the district court did not abuse its discretion.

The Yangs further appeal the district court's denial of their motion for a mistrial based on prosecutorial misconduct. For example, the Yangs contend that a prosecutor attempted to improperly influence a juror by making eye-contact, smiling and nodding at the juror as she entered the room. The Yangs also assert that this juror was particularly receptive and attentive during the prosecution's closing argument, while unreceptive to the Defendants' closing arguments. Another instance of misconduct was said to have occurred when a prosecutor was making head gestures while the defense was examining a witness. Finally, the Yangs allege a number of examples of the prosecutors' vouching for and improperly bolstering witnesses' credibility, improperly commenting on the lack of evidence, and wrongfully attacking the defense counsel's character.

We review for abuse of discretion the district court's denial of a motion for mistrial. *United States v. Rigsby*, 45 F.3d 120, 125 (6th Cir. 1995). The district court denied the Yangs' motions for mistrial and after extensive discussion, found that "this whole thing . . . has been blown out of proportion." The court therefore refused to hold a *Remmer* hearing. *See Remmer v. United States*, 347 U.S. 227 (1954). A *Remmer* hearing is not required unless the defendant can show that the

in making a new acrylic adhesive developed by Avery. The Yangs sent Lee samples of the adhesives they had created using information he had supplied; Lee tested the samples and offered comparisons with Avery's products derived from the same adhesive formula.

The FBI confronted Lee after learning of Lee's industrial espionage. Lee admitted his relationship with the Yangs and Four Pillars and provided the Government with materials documenting his activities since 1989. Lee also agreed to cooperate with the Government in a sting operation to arrest and prosecute the Yangs. A short time later, Yang told Lee that he would be in the United States during the summer of 1997. Lee volunteered that he had information on a new emulsion coating that he would provide Yang at that time and asked whether Yang might also be interested in information on Avery's operations in Asia. Yang was very interested.

On September 4, 1997, Lee met Yang and Sally in Lee's hotel room in Westlake, Ohio. Lee had consented to the FBI's videotaping this meeting. In the course of the meeting, Lee showed the Yangs documents provided by the FBI, including an Avery patent application relating to a new adhesive product. The documents bore "confidential" stamps and Lee emphasized to the Yangs that the information was the confidential property of Avery. Yang and Sally, at Yang's direction, began to tear off the "confidential" stamps. The Yangs discussed with Lee the information Lee had previously provided to Four Pillars. Following the meeting, the Yangs—with the confidential documents in their possession—were arrested by the FBI.

## II. Analysis

### A. The trade secret counts

18 U.S.C. §1832 provides:

(a) Whoever, with intent to convert a trade secret, that is related to or included in a product that is produced for or

placed in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly–

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;

(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits,

delivers, sends, mails, communicates, or conveys such information;

(3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

(4) attempts to commit any offense described in paragraphs (1) through (3); or

(5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy, shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

b) Any organization that commits any offense described in subsection (a) shall be fined not more than $5,000,000.

The Defendants were found guilty of violating 18 U.S.C. §1832(a)(4) and (5), based on their attempt and conspiracy to steal Avery's trade secret. On appeal the Defendants argue that the district court erred when it ruled that the Government did not have to prove that what the Defendants sought to steal was an actual trade secret. The Defendants contend that the district court's reliance on *United States v. Hsu*, 155 F.3d 189 (3d Cir. 1998), which held that legal impossibility is no defense to attempt and conspiracy charges, was error because *Hsu* was incorrectly decided.

We review de novo the district court's definition of the elements of the charged offense, the meaning attached to

gender. We review for clear error the factual findings upon which the district court based its ruling. *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996).

To establish a violation under *Batson*, the defendant must make a prima facie case by showing that the Government removed jurors for a discriminatory reason. *J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127 (1994); *Batson*, 476 U.S. at 96. The burden of production then shifts to the Government to offer a race- (or gender-) neutral justification for its challenges. *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (per curium). At this stage, the Government's explanation need not be "persuasive, or even plausible," *id.* at 768; the explanation must simply be one in which discriminatory intent is not inherent. *Id.* The final step is for the trial court to determine whether the party challenging the peremptory strikes has proven purposeful discrimination. Here, the district court may decide to disbelieve an implausible or silly reason, but the burden is on the party challenging the strike to prove that it was motivated by discriminatory animus. *Id.* The final makeup of the jury is relevant to a finding of discrimination. *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1520-21 (6th Cir. 1990).

In response to the Defendants' *Batson* challenge, the Government claimed that it struck one juror because of an apparent "attitude problem," a second because she was unemployed, and a third because she did not have the necessary background to be a juror. The district court found those explanations to be legitimate and race- and gender-neutral. Following this ruling, the Government did not use its remaining challenges and the final jury consisted of nine women and five men. We conclude that the reasons offered by the Government for its peremptory challenges do not violate equal protection. *See id.* at 769. The Yangs showed neither purposeful discrimination nor that the Government's reasons were illogical. We find no error.

brief periods when Lee was not in the room, the taping violated 18 U.S.C. § 2511(2)(c). We review for clear error the district court's factual determinations with regard to the motion to suppress; we review de novo the court's legal determinations. *United States v. Guimond*, 116 F.3d 166, 169 (6th Cir. 1997).

The FBI was not required to obtain a warrant because it had Lee's consent to videotape the meeting. *United States v. White*, 401 U.S. 745 (1971). The Yangs voluntarily came to the meeting with Lee and voluntarily talked with him in his hotel room. They had relinquished any "justifiable" expectation of privacy. *Id.* at 751-52 ("If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case."). And we find no merit to Sally's claim that the entirety of the tapes must be suppressed because they contain brief periods when Lee was not in the room. The record establishes that the technicians taping the meeting were expressly instructed to tape only while Lee was in the room. The technicians erred. The record establishes that the prosecutors learned of this error and, without reviewing the tape, arranged for the unauthorized time periods to be redacted. The unredacted version was made available to the Defendants, but nothing from the unauthorized time period was ever utilized in the prosecution. Further, the district court, after an evidentiary hearing, concluded that the Government had not acted in bad faith. We find no error here.

The Yangs next claim that the Government exercised its peremptory challenges in a discriminatory manner in violation of the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79 (1986). Specifically, the Yangs contend that because in exercising three peremptory challenges the Government excluded three women, two of whom were black, the Government was excluding jurors on the basis of race and

those elements, and the applicability of the defense of legal impossibility. *United States v. Alvarez*, 266 F.3d 587, 592 (6th Cir. 2001).

In *Hsu*, the Third Circuit was faced with a claim nearly identical to that raised by the Yangs, namely, that it was legally impossible for the defendants to be guilty of attempting to steal a trade secret and conspiring to steal a trade secret because that which they were accused of attempting and conspiring to steal was not, as it turned out, an actual trade secret. This issue arose in the context of the defendants' claim that they were entitled to examine the trade secret documents in order to establish their defense of legal impossibility since, in their view, if those documents did not actually contain trade secrets then the defendants could not be guilty of attempting to steal trade secrets. Hsu was one of several individuals led to believe that a scientist employed by Bristol-Myers Squibb, who was secretly cooperating with the FBI, was willing to sell corporate secrets. *Id.* at 192. A meeting was arranged at which Hsu met with the scientist and personally reviewed and discussed with him Bristol-Myers documents that were clearly marked "CONFIDENTIAL." *Id.* at 192-93. Immediately thereafter, Hsu was arrested by the FBI. *Id.* at 193.

Hsu was charged with attempt and conspiracy to steal a trade secret under 18 U.S.C. § 1832. *Id.* at 197. He was not charged with the actual theft of a trade secret. *Id.* at 198. Hsu claimed that if that which he had sought to steal was not in fact a trade secret, it was legally impossible for him to be guilty of the offense of attempted theft of a trade secret. The Third Circuit rejected this defense. The court noted that virtually no other circuit continued to recognize the defense of legal impossibility, and that even in the Third Circuit the defense had been severely limited. In particular, the court reviewed its holding in *United States v. Everett*, 700 F.2d 900 (3d Cir. 1983), that legal impossibility is not a defense to the charge of attempted distribution of a controlled substance under 21 U.S.C. § 846. Consistent with the analysis in

*Everett*, the *Hsu* Court reviewed the legislative history of the EEA, particularly the comprehensive nature of the law's approach to the serious and growing economic threat presented by corporate espionage, and the fact that the law was drafted at a time when the defense of legal impossibility had been almost entirely abandoned. *Hsu*, 155 F.3d at 200-02. The court also observed that if it were to hold that legal impossibility is available as a defense to the charge of attempted theft of trade secrets, the anomalous result would be that the government would be compelled to use actual trade secrets in its sting operations and would be compelled to turn over those trade secrets to the persons charged with attempting to steal them. *Id.* at 202. Accordingly, the court concluded that legal impossibility is not a defense to a charge of attempted theft of trade secrets. Rather, the court held that:

> A defendant is guilty of attempting to misappropriate trade secrets if, "acting with the kind of culpability otherwise required for commission of the crime, he . . . purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

*Id.* (quoting Model Penal Code § 5.01(1)(c) (1985)). Because the defendant's guilt turns on the "circumstances as be believes them to be," the court held that the government was not required to prove that what the defendant sought to steal was in fact a trade secret, but only that the defendant believed it to be one. *Id.* at 203.

Turning to the charge of conspiracy to steal trade secrets, the Third Circuit held that legal impossibility is not a defense to the charge of conspiracy to steal trade secrets. The court held that the basis of the conspiracy charge is the agreement to commit the unlawful act, and not the unlawful act itself. Therefore, because the "illegality of the agreement does not depend upon the achievement of its ends," and because it is

The reasons offered by the district court for the extent of the upward departure are insufficient. As stated earlier, a district court when departing must cite to facts and circumstances that justify the extent of the departure. *Crouse*, 145 F.3d at 789. The size of the departure should correspond to the grounds for the departure. Here, the district court merely recited sections from the Guidelines and then concluded that $5,000,000.00 was the appropriate fine. Furthermore, we find it very difficult to reconcile the fourteen level downward departure in offense level with the upward departure necessitated by that downward departure in order to arrive at a fine that, in the district court's opinion, adequately accomplished the objectives of the Guidelines.

Accordingly, we will vacate the sentences of all Defendants and remand this matter to the district court for resentencing consistent with this opinion.

### C. The remaining assignments of error

The Defendants, as alluded to above, assign as error a variety of the district court's orders entered during the course of the proceedings, including: (1) denial of a motion to suppress the video- and audiotapes of the hotel room meeting; (2) overruling of a *Batson* challenge to the composition of the jury; (3) denial of a motion to disallow contact between the prosecutors and witnesses; (4) denial of a motion for mistrial based on prosecutorial misconduct; and (5) denial of a motion for a new trial based on newly discovered evidence. The Defendants further claim that the district court plainly erred in its instruction to the jury on the meaning of "theft," and that the evidence is insufficient to support their convictions. As we explain below, we find no merit to these claims.

Sally Yang claims that denial of her motion to suppress the tapes made by the FBI of the Yangs' meeting with Lee in his hotel room was error. She contends that the taping was unconstitutional because the FBI did not obtain a warrant; further, she claims that because the tapes included some very

district court believed that the conduct in the counts on which the Defendants were acquitted and the pre-EEA theft of Avery's proprietary information was not relevant conduct and should not be considered in calculating the sentence, the court should have refused to consider it in arriving at the initial offense levels.    Instead, however, the court expressly characterized that conduct as relevant conduct and included it in its calculations of loss as well as its determinations of more than minimal planning and role in the offense.[3]   If that conduct was relevant for purposes of determining the offense levels and amount of loss, we are at a loss to understand how its consideration can at the same time be the basis for a downward departure.

We hold that the district court abused its discretion in departing downward fourteen levels for each of the Defendants.  We note as well that, although the Presentence Reports contained mention of possible grounds for downward departure, the Reports did not mention any of the grounds that the district court in fact relied upon in making these very significant departures.  The district court's failure to give notice of its intention to depart, we conclude, was error as well.  *See Burns v. United States*, 501 U.S. 129, 135, n. 4 (1991).

The district court, after departing downward fourteen levels to an adjusted offense level of six for Four Pillars, for which the fine would have been $5,000.00, *see* USSG § 8C2.4(d), or a maximum of $16,000.00, *see* USSG § 8C2.6, fined Four Pillars the statutory maximum $5,000,000.00.  Citing USSG § 5E1.2(d)(1) and 5E1.2 cmt. n.4, the court denied Four Pillars' motion to correct its sentence.  The court stated summarily that the Guideline maximum was insufficient to punish, deter, prevent a windfall, and to reflect the seriousness of the crime.

---

[3]We note as well that the fourteen level downward departures lack the necessary findings to permit meaningful review of the reasonableness of the degree of the departures.

"irrelevant that the ends of the conspiracy were from the very inception of the agreement objectively unattainable," *id.* at 203 (quoting *United States v. Jannotti*, 673 F.2d 578, 591 (3d Cir. 1982)(en banc)), it is also irrelevant that it may have been objectively impossible for the conspirators to commit the substantive offense.  *Id.*  Accordingly, the court held that because legal impossibility is not a defense to the charge of conspiracy to steal trade secrets, the government was not required to prove that the information the defendants conspired to steal was in fact a trade secret.

We find persuasive the logic and reasoning of the Third Circuit.  It is not necessary for us to delve into the question of whether a defense of legal impossibility is recognized at all in the Sixth Circuit, and indeed, we are aware of a handful of cases over the past decade in which we have at least acknowledged the possibility that there is such a defense.  *See, e.g.*, *United States v. Mise*, 240 F.3d 527, 530 (6th Cir. 2001); *United States v. Hixon*, 987 F.2d 1261, 1267 (6th Cir. 1993); *United States v. Peete*, 919 F.2d 1168, 1175-76 (6th Cir. 1990).  Importantly, this circuit, like the Third Circuit, has definitively established in the context of the federal drug laws that impossibility is not a defense.  In *United States v. Reeves*, 794 F.2d 1101 (6th Cir. 1986), we determined that in light of the congressional desire to enforce federal drug laws as fully as possible, the fact that the defendant did not actually possess or gain possession of cocaine (but instead possessed an innocuous substance) was irrelevant to the defendant's conviction for attempt to distribute and possess cocaine. This was because attempt requires that the government establish: (1) an intent to engage in criminal activity, and (2) the commission of an overt act constituting a substantial step towards the commission of the substantive offense.  *Id.* at 1104.  Since neither element required the completion of the substantive offense, or that the material object of the defendant's desires (cocaine or a sham substance) actually be illegal, we concluded that the defendant was guilty of attempted distribution and possession of cocaine.  *Id.* at 1106.

Further, like the Third Circuit, this circuit maintains that congressional purpose gives meaning to the extent and reach of a statute. *See United States v. Barry*, 888 F.2d 1092, 1096-97 (6th Cir. 1990) (internal quotations and citation omitted) (noting that the "cardinal canon of statutory construction" is that statutes "should be interpreted harmoniously with their dominant legislative purpose"). Here, the purpose of the EEA was to provide a comprehensive tool for law enforcement personnel to use to fight theft of trade secrets. To follow the Yangs' reasoning and rule as they ask would eviscerate the effectiveness of the act. The government would be severely limited in its ability to use the assistance of people willing to cooperate to catch and convict thieves of trade secrets. In effect, the Yangs' position would, as the Third Circuit pointed out, force "the government to disclose trade secrets to the very persons suspected of trying to steal them, thus gutting enforcement efforts under the EEA." *Hsu*, 155 F.3d at 202.

Under the Model Penal Code a defendant is guilty of attempting to commit a criminal offense when he "purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step . . . planned to culminate in his commission of the crime." Model Penal Code §5.01(1)(c). *See also Reeves*, 794 F.2d at 1104 ("In order to prove attempt, the government [must] . . . establish: (1) the intent to engage in criminal activity, and (2) the commission of one or more overt acts . . . towards the commission of the substantive offense."). The Yangs believed that the information Lee was providing was trade secrets belonging to Avery. They attempted to steal that information. The fact that they actually did not receive a trade secret is irrelevant. Since the Yangs intended to commit the crime and took a substantial step towards commission of the crime, they violated §1832(a)(4). *United States v. Shelton*, 30 F.3d 702, 705 (6th Cir. 1994).

The Yangs' conspiracy to steal the trade secrets in violation of §1832(a)(5) was completed when, with the intent to steal the trade secrets, they agreed to meet with Lee in the hotel

and shall take them into account only to the extent that they do have relevance." 28 U.S.C. § 994(c)-(d). None of the factors in either subsection remotely implicates the participation of the victim in the prosecution of the offender. More importantly, however, those subsections make it clear that the factors the Commission is to consider must be relevant to the offense or the offender. The district court here has provided no explanation of how the victim's participation in the prosecution is in any way relevant to either the offense or the offenders.

The Supreme Court made it clear in *Koon* that the issue in sentencing departures is not "whether the particular factor is within the 'heartland' as a general proposition, but whether the particular factor is within the heartland given all the facts of the case." *Koon*, 518 U.S. at 99-100. The district court has provided no basis upon which we could conclude that Avery's participation in the prosecution of these Defendants takes this case outside the "heartland" of Guidelines cases. Accordingly, we conclude that the district court abused its discretion in departing downward on this basis.

Contrary to the Defendants' claims, the district court did not base its fourteen level downward departures on a series of "unquantifiable factors." The district court based its departures primarily on its perception that Avery had improperly participated in the prosecution of the offense and additionally on its concern that the Government had overcharged the Defendants, that the Defendants' conduct dating back to the inception of the scheme to steal Avery's confidential and proprietary information was not illegal at the time, and that the Government was using that conduct to enhance the Defendants' sentences. The participation of Avery in the prosecution of the Defendants we have already concluded is not relevant to the sentencing of these Defendants and, at least in this case, is not a permissible basis for downward departure. The district court concedes in the sentencing order that the Defendants were not convicted on any of the counts that constituted overcharging. Finally, if the

matter—the Sentencing Commission took into consideration the participation of the victim in the prosecution of the crime. Certainly it is not mentioned as a factor whose consideration is forbidden in determining whether to depart from the applicable Guidelines sentence. The reason for the omission is, we suspect, that the victim's participation in the prosecution is wholly irrelevant to either the defendant's guilt or the nature or extent of his sentence. While we do not dispute the Defendants' contention that *Coleman*, 188 F.3d at 358, prohibits the district court from categorically excluding any non-prohibited factor from consideration in determining whether to make a downward departure, we are also aware of the Supreme Court's reminder that:

> If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

*Koon*, 518 U.S. at 96 (citations omitted). Consideration of the structure and theory of the Guidelines as a whole requires that the court look at the factors to be considered in imposing sentence, as set forth in 18 U.S.C. § 3553(a). None of those factors in any way implicates a consideration of the participation by the victim of the crime in the prosecution of the offender. The structure and theory of the Guidelines as a whole includes the provisions of 28 U.S.C. § 994, which lays out the duties of the Sentencing Commission. Subsections 994 (c) and (d) each lists factors to be considered by the Commission in establishing categories of offenses (§994(c)) and categories of defendants (§994(d)) for use in the Guidelines and policy statements. Those subsections mandate that the Commission consider whether the listed factors, among others, "have any relevance to the nature, extent, place of service, or other incidents . . . of an appropriate sentence,

---

room and they took an overt act towards the completion of the crime, that is, when the Yangs went to the hotel room. The fact that the information they conspired to obtain was not what they believed it to be does not matter because the objective of the Yangs' agreement was to steal trade secrets, and they took an overt step toward achieving that objective. Conspiracy is nothing more than the parties to the conspiracy coming to a "mutual understanding to try to accomplish a common and unlawful plan," *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990) (citation and internal quotations omitted), where at least one of the conspirators knowingly commits an overt act in pursuit of the conspiracy's objective. *United States v. Hamilton*, 263 F.3d 645, 652 (6th Cir. 2001). It is the mutual understanding or agreement itself that is criminal, and whether the object of the scheme actually is, as the parties believe it to be, unlawful is irrelevant.

In sum, we adopt the reasoning employed by the Third Circuit. We therefore affirm the district court's ruling that legal impossibility is not a defense to prosecution under §1832(a)(4) and (5).[2]

---

[2] After reviewing the record and briefs, we also reject the Defendants' variance and vagueness claims. The Defendants were indicted on charges of attempt to steal trade secrets and conspiracy to steal trade secrets. Neither the fact that those charges do not require that the targeted information was in fact trade secrets nor the Government's initial position that some of that information was in fact trade secrets varies the indictment. *See generally United States v. Miller*, 471 U.S. 130, 136-44 (1985) (overruling the proposition that a narrowing of the indictment constitutes an amendment rendering the indictment void, and holding that surplusage in the indictment is not a variance so long as the indictment clearly set out the crime and its elements).

We find no merit in the Defendants' claim that if 18 U.S.C. § 1832(c)(4) and (5) do not require that the information that is the subject of the attempt or conspiracy be actual trade secrets, the statute is unconstitutionally vague. As we pointed out recently in *United States v. Krumrei*, 258 F.3d 535 (6th Cir. 2001), a vagueness challenge to a statute that does not involve First Amendment rights must be examined in light of the facts of the particular case, and a defendant cannot establish vagueness in an hypothetical setting. *Id.* at 537. Here, the Defendants

### B.  Sentencing issues

The district court made a number of sentencing departures which are challenged on appeal.  The district court departed downward fourteen levels in setting the adjusted offense level for each of the Defendants.  The district court then departed upward and imposed the statutory maximum fine of $5,000,000.00 on Four Pillars.  The district court later denied Four Pillars' motion for correction of sentence pursuant to Federal Rule of Criminal Procedure 35(c).

The Sentencing Guidelines, referencing 18 U.S.C. §3553(b), permit a downward departure when "there exists an aggravating or mitigating circumstance . . . not adequately taken into consideration by the Sentencing Commission." U.S. Sentencing Guidelines Manual (USSG) §5K2.0 (2001). We review for abuse of discretion the district court's departures from the recommended Guidelines sentence. *Koon v. United States*, 518 U.S. 81, 100 (1996).  That standard includes review to ensure that the factors upon which the district court based its decision to depart are a permissible basis for departure—a question of law—since a district court abuses its discretion when it makes an error of law.  *Id.* Because whether a factor is a permissible basis for departure is a question of law a reviewing court owes no deference to the sentencing court's resolution of that question.  *Id.*

In deciding whether to depart the sentencing court must determine whether the factors possibly warranting departure

complain that they cannot know that their conduct violates the statute unless they know that the information they seek to steal is in fact a trade secret.  The standard for vagueness in a criminal statute is whether "it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *Id.* at 536 (quoting *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990)).  The statute clearly proscribes the attempt or conspiracy to steal trade secrets.  We have every confidence that ordinary people seeking to steal information that they believe is a trade secret would understand that their conduct is proscribed by the statute.

are forbidden, encouraged, or discouraged by the Sentencing Commission as factors upon which to base a departure. *United States v. Coleman*, 188 F.3d 354, 358 (6th Cir. 1999) (en banc).  If the sentencing court determines that those factors are permissible and warrant a departure, the court must also provide a statement of reasons sufficiently detailed to permit review of the reasonableness of the departure in light of the grounds for it.  *United States v. Crouse*, 145 F.3d 786, 789 (6th Cir. 1998).

The district court issued a memorandum opinion explaining the sentences.  In that opinion, the court's primary justification of its fourteen point departure for each of the three Defendants was Avery's participation in the prosecution, about which the court said, "In my experience no victim has played a more direct role than Avery in prosecuting a criminal case. . . . With Avery's participation and the acquiescence of the Government, the criminal case has become a tool for Avery to seek vengeance instead of a pursuit of justice."  The district court chastised Avery for "ha[ving] been an active participant in, and at times, even manipulated, the presentation of the Government's case to enhance its ability to recoup its losses," and for "attempting to control the sentence" through the calculation of the loss suffered as a result of the Defendants' activities.  Other than Avery's providing to the Government the same loss evaluation experts Avery intended to use in the parallel civil case against the Yangs, however, the court pointed to no instances or examples of Avery's "manipulation" or "control" of the trial or the sentencing.  Neither did the court provide any insight into how or why Avery's participation lessened the Defendants' culpability or the seriousness of their crime, or how Avery's participation in the prosecution in any way constituted an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission."  USSG § 5K2.0.

It is unlikely that in determining the applicable sentences for theft of trade secrets—or for any other offense, for that